Paul J. NIEMEIER, Plaintiff-Appellant,

v.

WATERGATE SPECIAL PROSECUTION FORCE, and Charles F. C. Ruff, Special Prosecutor, Watergate Special Prosecution Force, Defendants-Appellees.

No. 76–2296.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 5, 1977.

Decided Nov. 9, 1977.

Rodolphe J. A. deSeife, Glen Ellyn, Ill., for plaintiff-appellant.

Thomas G. Wilson, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., Leonard Schaitman, Appellate Section, Dept. of Justice, Washington, D. C., Thomas P. Sullivan, U. S. Atty., Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, SWYGERT and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The primary issue presented in this appeal is whether an undisclosed portion of a memorandum to the Watergate Special Prosecutor from the Counsel to the Special Prosecutor is exempt from disclosure under

## I

Plaintiff requested from Watergate Special Prosecutor Charles F. C. Ruff a copy of the August 29, 1974, memorandum written by Philip Lacovara, then Counsel to the Special Prosecutor, and addressed to Leon Jaworski, then the Special Prosecutor. This request was denied initially on the ground that the Lacovara memorandum was governed by exemption five of the FOIA, 5 U.S.C. § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . ." The plaintiff sought reconsideration of this denial of his request and, upon reexamination, Special. Prosecutor Ruff maintained that the memorandum was not subject to disclosure with the exception of one legal citation.[1]

The plaintiff then filed suit in the district court under the Freedom of Information Act seeking disclosure of the Lacovara memorandum. The district court concluded that the memorandum was exempt from disclosure under exemption five and therefore dismissed plaintiff's complaint for want of jurisdiction. Plaintiff appeals from that decision and our jurisdiction derives from 28 U.S.C. § 1291.

## II

█ The Watergate Special Prosecution Force (WSPF) was organized as an independent investigatory and prosecutive agency[2] within the Department of Justice.

---

1. The pertinent part of Ruff's letter to plaintiff states:

 We have reexamined the memorandum from Mr. Lacovara to Mr. Jaworski which you have requested. Only one portion of that memorandum deals with the question of pre-indictment Presidential pardon, which is the matter discussed in the portion of the Jaworski letter quoted in the *Report*. In addition to the portion of the memorandum quoted in the Jaworski letter, there is one other sentence dealing with that subject. That sentence reads, "see, *e.g.*, *Ex parte Garland*, 71 U.S. (4 Wall.) 333, 380–81, 18 L.Ed. 366 (1867)." Thus, this is the only portion of the memorandum which is not exempt from disclosure under § 552(b)(5). If you wish to examine the non-exempt portion of the memorandum, please contact this office.

2. WSPF is clearly an agency for purposes of the FOIA. 5 U.S.C. § 551(1) defines an "agency" as "each authority of the Government of the United States, whether or not it is within or

The duties and responsibilities of the Watergate Special Prosecutor were set forth in a formal Department of Justice regulation[3] which provided that the Special Prosecutor was delegated by the Attorney General "full authority for investigating and prosecuting offenses against the United States" including "allegations involving the President."[4] Specifically, pursuant to this broad authority, the Special Prosecutor was to determine "whether or not to prosecute any individual . . . ."[5]

Plaintiff is concerned with the decision not to seek the indictment of former President Richard M. Nixon. It is clear that the above quoted regulations gave the Special Prosecutor full authority to press for criminal liability concerning President Nixon. Leon Jaworski, upon his resignation as Special Prosecutor in October of 1974, informed then Attorney General Saxbe of the WSPF decision not to seek indictment of President Nixon in a letter accompanying his letter of resignation. Mr. Jaworski therein stated his reasons for not seeking an indictment of President Nixon after Mr. Nixon received a "full, free and absolute" pardon from President Ford on September 8, 1974. Mr. Jaworski based this decision on the memorandum written by Philip Lacovara, which Mr. Jaworski stated was on file in the office of the Special Prosecutor and from which he quoted Lacovara's conclusion to the effect that to seek indictment of President Nixon after the pardon would be futile.[6] Both the Jaworski letter and the same portion of the Lacovara memorandum were subsequently quoted in the final report of the WSPF of October, 1975, in the section entitled, "Actions Related To President Nixon's Possible Criminal Liability,"[7] which explained the

subject to review by another agency." WSPF had the requisite independent authority in exercising specific functions to be an agency under the FOIA. *See Koden v. Immigration and Naturalization Service,* 564 F.2d 228 (7th Cir. 1977); *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971).

3. Under authority of 5 U.S.C. § 301 and 28 U.S.C. §§ 509, 510, the regulations were promulgated and appear at 38 Fed.Reg. 14688 (June 4, 1973). Sometime after the dismissal of Archibald Cox on October 20, 1973, these regulations were retroactively rescinded effective October 21, 1973. *See* 38 Fed.Reg. 29466 (October 23, 1973). The Office of Watergate Special Prosecutor was reinstated less than three weeks later under a regulation which, for our purposes, is identical with the original. *See* 38 Fed.Reg. 30738 (November 7, 1973). All references hereafter will be to this final regulation. The dismissal of Cox was subsequently held to be illegal in *Nader v. Bork,* 366 F.Supp. 104 (D.D.C.1973).

4. 38 Fed.Reg. 30738 (November 7, 1973) (Appendix).

5. *Id.*

6. The letter from Jaworski to Saxbe provided, in relevant part, as follows:
 Although not appropriate for comment until after the sequestering of the jury in *United States v. Mitchell, et al.,* in view of suggestions that an indictment be returned against former President Richard M. Nixon questioning the validity of the pardon granted him, I think it proper that I express to you my views on this subject to dispel any thought that there may be some relation between my resignation and that issue.
 As you realize, one of my responsibilities, not only as an officer of the court, but as a prosecutor, as well, is not to take a position in which I lack faith or which my judgment dictates is not supported by probable cause. The provision in the Constitution investing the President with the right to grant pardons, and the recognition by the United States Supreme Court that a pardon may be granted prior to the filing of charges are so clear, in my opinion, as not to admit of doubt. Philip Lacovara, then Counsel to the Special Prosecutor, by written memorandum on file in this office, came to the same conclusion, pointing out that:
 ". . . the pardon power can be exercised at any time after a federal crime has been committed and it is not necessary that there be any *criminal proceedings pending.* In fact, the pardon power has been used frequently to relieve federal offenders of criminal liability and other penalties and disabilities attaching to their offenses even where no criminal proceedings against the individual are contemplated."
 I have also concluded, after thorough study that there is nothing in the charter and guidelines appertaining to the office of the Special Prosecutor that impairs or curtails the President's free exercise of the constitutional right of pardon.

7. Watergate Special Prosecution Force Report 119, 131–33 (October, 1975).

WSPF reasons for not seeking the indictment of President Nixon.

## III

■ We agree with the district court that the Lacovara memorandum must initially be regarded as a "predecisional intra-agency legal memorandum falling within the provisions of 5 U.S.C. § 552(b)(5) and therefore exempt from the compelled disclosure provisions of the Freedom of Information Act, as amended."[8] The decision in this case, however, does not rest there. Rather, plaintiff claims that this exemption is overridden by the fact that the Lacovara memorandum was expressly adopted or incorporated as part of a final disposition of the allegations of criminal liability of President Nixon and is therefore disclosable under 5 U.S.C. § 552(a)(2)(A).[9]

The relationship between exemption five and section (a)(2)(A) of the FOIA was addressed by the Supreme Court in *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153–54, 95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975):

> [W]ith respect at least to "final opinions," which not only invariably explain agency action already taken or an agency decision already made, but also constitute "final dispositions" of matters by an agency, . . . we hold that Exemption 5 can never apply.

Therefore, the initial question is whether the WSPF Report of October, 1975, can be regarded as such a final opinion.

The Court in *Sears* considered the question of what constitutes a "final opinion" made in the "adjudication of cases" within the meaning of 5 U.S.C. § 552(a)(2)(A). There, the concern was with Appeals Memoranda sent from the General Counsel to the Regional Director of the NLRB deciding whether or not to issue a complaint on the basis of a "charge" filed by a private party with the Board. The Court analyzed the meaning of "final opinion":

> The decision to dismiss a charge is a decision in a "case" and constitutes an "adjudication": an "adjudication" is defined under the Administrative Procedure Act, of which 5 U.S.C. § 552 is a part, as "agency process for the formulation of an order," 5 U.S.C. § 551(7); an "order" is defined as "the whole or part of a *final disposition* whether affirmative [or] negative . . . of an agency in a matter . . .," 5 U.S.C. § 551(6) (emphasis added); and the dismissal of a charge, as noted above, is a "final disposition." Since an Advice or Appeals Memorandum explains the reasons for the "final disposition" it plainly qualifies as an "opinion"; and falls within 5 U.S.C. § 552(a)(2)(A).[10]

Concerning the possible criminal liability of President Nixon, the WSPF was given full authority, as quoted above in the regulations, to investigate and determine whether to prosecute allegations specifically involving the President. The Special Prosecutor was guaranteed complete independence and the Attorney General declared that he would "not countermand or interfere with the Special Prosecutor's decisions or actions."[11] The regulations further required that the Special Prosecutor "upon completion of his assignment submit a final report to the appropriate persons or entities of the Congress."[12] Thus, the WSPF Report was a required culminating act in the mandate of the WSPF to investigate, *inter alia*, allegations involving the President.[13]

---

8. Memorandum Order at 1.

9. 5 U.S.C. § 552(a)(2)(A) requires an agency to make available for public inspection and copying "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."

10. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 158, 95 S.Ct. 1504, 1520, 44 L.Ed.2d 29 (1975) (emphasis in original).

11. 38 Fed.Reg. 30738 (November 7, 1973) (Appendix).

12. *Id.*

13. The mandate of the WSPF from the Congress and the Attorney General regarding his possible criminal liability might be viewed as similar to the filing of a "charge" before the NLRB. The mandate was, at least in that portion, specifically directed and required action

The decision contained in the WSPF Report of October, 1975, not to seek indictment of President Nixon was as final a disposition as a decision by the WSPF could be, representing, as it did, an unreviewable decision regarding its mandate to investigate and prosecute allegations involving the President. Under these unique circumstances, we hold that the Watergate Special Prosecution Force Report of October, 1975, is a final disposition, as it relates to the charges concerning President Nixon, within the meaning of 5 U.S.C. § 552(a)(2)(A).[14]

We wish to emphasize that we view our conclusion regarding this construction of 5 U.S.C. § 552(a)(2)(A) on the facts presented here to be very narrow. That is, although we hold on the facts of this case that the WSPF Report is a final disposition for purposes of the FOIA, we come to this conclusion "[w]ithout deciding whether a public prosecutor makes 'law' when he decides not to prosecute or whether memoranda explaining such decisions are 'final opinions' . . . ."[15]

## IV

Concluding that the WSPF Report is a final disposition does not end our inquiry. Plaintiff does not seek the WSPF Report itself but rather requests the Lacovara memorandum which the WSPF Report quotes and relies on in explaining its decision not to seek President Nixon's indictment. Plaintiff argues that the Lacovara memorandum was expressly adopted or incorporated by reference into the WSPF Report, and must be disclosed as part of the "final disposition" of the allegations concerning Mr. Nixon despite the claim of a section five exemption.[16]

 The Supreme Court in *Sears* also addressed the question of exemption from disclosure for memoranda incorporated by reference in non-exempt final disposition documents and the rule set forth there must initially guide us:

Thus, we hold that, if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.[17]

It is not disputed that the WSPF Report expressly adopted the Lacovara memorandum, at least in part, since it is quoted in the Report along with the Jaworski letter

on the part of the WSPF to determine whether to seek President Nixon's indictment.

Moreover, the decision *not* to seek the indictment of President Nixon adds support to the claim that the Report is a final disposition. If indictment had been sought, litigation would have ensued, and the conclusion of the matter would have been in a judicial forum. Here, however, there will be no judicial opinion because further litigation has been foreclosed by the decision not to seek indictment. As the Court in *Sears*, 421 U.S. 132, 155, 95 S.Ct. 1504, 1519, 44 L.Ed.2d 29, declared:

In the case of decisions *not* to file a complaint, the memoranda effect as "final" a "disposition," . . . as an administrative decision can—representing, as it does, an unreviewable rejection of the charge filed by the private party.

**14.** An alternative and not unpersuasive claim by plaintiff is that the original letter by Jaworski to Saxbe quoting the Lacovara memorandum and explaining his reasons for not seeking the indictment of Mr. Nixon is itself a final disposition within the meaning of section

(a)(2)(A). This letter can be analogized to the Advice Memoranda in *Sears*. Both began as internal communications (in *Sears* between the General Counsel and the Regional Director; here, between the Special Prosecutor and the Attorney General), but both became final dispositions when the decision was made not to proceed with the charges.

**15.** *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 156 n. 22, 95 S.Ct. 1504, 1519, 44 L.Ed.2d 29 (1975).

**16.** It is clear that the Lacovara memorandum is not merely a factual document which would probably be disclosable in the first place. *See EPA v. Mink*, 410 U.S. 73, 87–93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

**17.** 421 U.S. 132, 161, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975) (emphasis in original). The same rule would apply if it was determined that the Jaworski letter, not the WSPF Report, must be regarded as the final disposition in this case.

stating that the memorandum is on "file in this office."[18] Defendants do not deny that part of the Lacovara memorandum was adopted by the WSPF Report but rather contend that the only portion adopted is the one that is quoted in both the Jaworski letter and the WSPF Report, together with an additional legal citation which was disclosed to plaintiff.[19] On this basis defendants claim that the rest of the memorandum must be regarded as exempt from disclosure under section five. We disagree.

More than the mere quotation of a legal memorandum is involved here.[20] The WSPF Report adopts not only the quotation from the memorandum, but also the statement that the Special Prosecutor's decision was consistent with the conclusions reached by Mr. Lacovara and thereby gained support therefrom. Moreover, the WSPF Report contains the statement that the memorandum was on file in the office of the Special Prosecutor. These circumstances imply that scrutiny of the memorandum as a whole is invited in order to assess the strength of the reasoning that was behind the quoted legal conclusions.

■ In a case such as this where an underlying memorandum is expressly relied on in a final agency dispositional document, even though only part of it is expressly reproduced, we hold that a presumption in favor of disclosability of the memorandum as a whole is created. This presumption is subject to rebuttal by the agency challenging disclosure upon the showing that other portions of the memorandum fall within the coverage of some exemption other than exemption five. The creation of this rebuttable presumption is consistent with *Sears* and with the purpose of the FOIA to allow maximum disclosure subject only to specified limited exceptions.[21]

■ In the instant case, defendants do not claim that the material in the remainder of the Lacovara memorandum falls within a separate statutory exemption. Rather, they contend that further disclosure would impinge the attorney-client privilege and reveal the decision-making process of the WSPF. These are the basic policies that underlie exemption five of the FOIA.[22] We conclude, however, as discussed below, that the policies underlying exemption five are not persuasive in supporting nondisclosure of the remainder of a memorandum which is relied upon in final disposition of a case. This conclusion supports our holding that exemption five must be regarded as inapplicable in the present case.

**18.** WSPF Report at 132.

**19.** *See* note 1, *supra*.

**20.** Indeed, the cases relied on by defendants do not even involve the quotation of material from agency memoranda. *Fisher v. Renegotiation Board*, 153 U.S.App.D.C. 398, 473 F.2d 109, 115 (1972) and *International Paper Co. v. Federal Power Commission*, 438 F.2d 1349, 1359 (2d Cir.), *cert. denied*, 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971), involved predecisional legal memoranda which had not been relied upon, quoted in, or referred to in the final agency disposition.

The district court cited *Montrose Chemical Corp. v. Train*, 160 U.S.App.D.C. 270, 491 F.2d 63 (1974), as support for its denial of disclosure in this case. The issue raised there, however, did not relate to the incorporation of a legal memorandum into an agency final opinion. Rather, the question was whether evidence summaries prepared by Environmental Protection Agency assistants were "factual" and thereby disclosable under *EPA v. Mink*, 410 U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), or "deliberative" and thereby within exemption five.

Moreover, in dictum relating to the question of incorporation, the *Montrose* court, 160 U.S. App.D.C. 270, 491 F.2d 63, 70 (1974), declared:

[T]his case is distinctly different from FOIA cases where a decision-maker has referred to an intra-agency memorandum as a *basis* for his decision. In such cases this court has required disclosure of the memoranda, for, once adopted as a rationale for a decision, the memorandum becomes part of the public record.

(Emphasis in original and footnote omitted).

**21.** The purpose of the FOIA is "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." S.Rep. No. 813, 89th Cong., 1st Sess., at 3 (1965). *See generally EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

**22.** Regarding the attorney-client privilege, *see* S.Rep. No. 813, at 2; as to preservation of the integrity of the deliberative process, *see* S.Rep. No. 813, at 9; H.R.Rep. No. 1497, at 10.

With regard to the attorney-client privilege, this doctrine applies where litigation is contemplated and the document represents attorney work product.[23] Where litigation is foreclosed as an option and the agency expressly chooses to make use of legal memoranda in its final decision, this choice eliminates any claim of attorney work product privilege for the expressly adopted document.[24] Under these circumstances, such documents "are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public."[25]

Likewise, defendants' contention that disclosure will reveal the underlying decision-making processes of the agency, with consequential inhibiting effects, must fail when a memorandum is adopted by an agency as part of its final disposition. The Court in *Sears* answered that claim in this manner:

> The probability that an agency employee will be inhibited from freely advising a decisionmaker for fear that his advice, *if adopted*, will become public is slight. First, when adopted, the reasoning becomes that *of the agency and becomes its responsibility to defend.* Second, *agency employees will generally be encouraged rather than discouraged by public knowledge that their policy suggestions have been adopted by the agency. Moreover, the public interest in knowing the reasons for a policy actually adopted by an agency supports [disclosure].*[26]

In summary, while we agree with the district court that the Lacovara memorandum must initially be regarded as nondisclosable under exemption five, the memorandum lost this exempt status when it was quoted and expressly adopted or incorporated by reference by the WSPF Report, which must be regarded as the final disposition of the allegations involving former President Nixon. Moreover, since we conclude that the WSPF Report expressly adopts or incorporates the whole Lacovara memorandum, that memorandum must be considered presumptively disclosable, subject to any claim of other applicable exemptions. No other exemptions have been shown to be applicable here. Therefore, the Lacovara memorandum must be disclosed and the district court is instructed, pursuant to 5 U.S.C. § 552(a)(4)(B), to enjoin defendants from withholding the Lacovara memorandum and to order the production of this memorandum which was improperly withheld from plaintiff.

REVERSED AND REMANDED.

**23.** Although the attorney-client privilege is broader than simply the work product privilege, this narrower aspect was the focus in *Sears* and relates more closely to the FOIA than the broad privilege for all communications between attorney and client. *See generally Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Kent Corp. v. NLRB*, 530 F.2d 612 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 316, 50 L.Ed.2d 287 (1976). As to the relationship between the broad and narrow aspects of the attorney-client privilege, *see Mead Data Central, Inc. v. U. S. Dept. of the Air Force*, 184 U.S.App.D.C. ——, 566 F.2d 242 (D.C.Cir. 1977). It is not necessary to decide here, as the Court did in *Mead*, the relationship

of the privilege to the work of agency staff attorneys as compared to the work of private attorneys.

**24.** *See American Mail Line, Ltd. v. Gulick*, 133 U.S.App.D.C. 382, 411 F.2d 696 (1969).

**25.** *Sterling Drug, Inc. v. F.T.C.*, 146 U.S.App. D.C. 237, 450 F.2d 698, 708 (1971). *Accord, American Mail Line, Ltd. v. Gulick*, 133 U.S. App.D.C. 382, 411 F.2d 696 (1969).

**26.** *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975).