[No. 45379.   En Banc.   June 1, 1978.]

HEARST CORPORATION, *Respondent,* v. HARLEY HOPPE, *Appellant.*

*Christopher T. Bayley, Prosecuting Attorney,* and *Russell A. Austin, Jr., Special Deputy,* for appellant.

*Foster, Pepper & Riviera, Camden M. Hall,* and *Peter S. Ehrlichman,* for respondent.

*Slade Gorton, Attorney General, Richard H. Holmquist, Senior Assistant, Robert E. Schillberg, Prosecuting Attorney for Snohomish County, Elmer E. Johnston, Jr., Deputy, P. Cameron DeVore* and *Marshall J. Nelson* on behalf of Allied Daily Newspapers, *Jennings P. Felix* on behalf of Washington Association of County Officials and Washington Association of County Assessors, and *Stephen K. Strong* and *David F. Stobaugh* on behalf of American Civil Liberties Union, amici curiae.

UTTER, J.—The Seattle Post–Intelligencer, respondent herein, sought under certain relevant statutes disclosure of information contained in records of the King County Assessor's office. The assessor refused to disclose the information and respondent brought suit in superior court against the assessor to force disclosure of the information. The superior court judge ordered the assessor to disclose the material sought, with minor exceptions. Appellant assessor then sought from the Court of Appeals an order staying the order of the Superior Court pending review by this court, which order was granted. On appeal we affirm the order of the trial court granting in substantial part respondent's requested relief.

The legal issues in this case concern the Washington public disclosure act, RCW 42.17, and raise five questions relating to various provisions of that act and other related legislation. (1) What is the appropriate standard of judicial review? (2) Does administrative inconvenience or difficulty limit the substantive disclosure requirements of the act? (3) Has appellant proved the folios sought are exempt in their entirety under RCW 41.17.310(1)(i), the exception for

intra–agency memorandums? (4) Has appellant proved the folios are exempt in their entirety under RCW 42.17.310(1)(c), the exemption for material, the disclosure of which would violate the taxpayers' right to privacy? And, (5) do the provisions of RCW 84.40.020 interpret or amend the provisions of the public disclosure act?

This controversy began when the Seattle Post–Intelligencer, in an ongoing investigation, sought to determine whether Mr. Hoppe, the King County Assessor, gave special favors to those who contributed to his campaign. It had taken the list of contributors to his election committee filed with the Public Disclosure Commission, and then attempted to match that list with the personal and real property records of those individuals in the assessor's office. Respondent wrote on two occasions asking for access to specific folios[1] relating to real property accounts. That access was denied, and respondent initiated suit.

Respondent alleged in its complaint filed January 30, 1978, that, contrary to legal advice by the King County Prosecuting Attorney, appellant Hoppe refused to give respondent an opportunity to inspect or copy the public portions of the folios and records. It then asked for an order to inspect and copy the records requested and for costs, including reasonable attorneys' fees, and damages of $25 per day after January 10, 1978, for each folio and record which they were denied the right to inspect. *See* RCW 42.17.340(3).

Respondent obtained an order to show cause requiring appellant to demonstrate why inspection or copying of public records should not be allowed. Following a hearing on February 2, 1978, the court found the records involved were public records and that respondent was entitled, as a

---

[1] In the process of reaching the proper value of property for assessment, certain records called "folios" are used in King County. These folios are a file containing field appraisers' work notes and information relevant to determining market value for appraisal. Each folio contains an average of 20 parcels of property in the same section, township and range, and are used in determining whether that property is uniformly assessed in the same area.

matter of law, to promptly inspect or copy them subject to appellant having the burden of proving that all or a portion of the records were specifically exempt by law from public disclosure. The court then ordered appellant to produce the public records sought by respondent and further ordered that appellant could delete from those records the portions thereof which he claimed were exempt. These records were submitted with deletions done in a manner consistent with appellant's claimed position. The numbers written on the exhibit refer to a "key" attached to the exhibit which define the statutory exemptions claimed by appellant. See Appendix. This was the first time appellant had given his specific reason for withholding the public records. RCW 42.17.310(4).

The Superior Court on February 24, 1978, specifically found that respondent did not seek and has not sought any disclosure of income data on any properties, depreciation figures on commercial properties, or site plans which show floor plans of any structures, data unrelated to value or assessment, information pertaining to access to any premises or to security measures or devices on any premises. It found the records disclosable, and ordered them released with the exception of specified exempt material deleted by the court. It further specifically reserved ruling on all other proceedings including, but not limited to, appellant's motion to dismiss defendant Hoppe as an individual and respondent's claim for damages and attorneys' fees.

The Washington public disclosure act is a strongly worded mandate for broad disclosure of public records. It states that, "mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society." RCW 42.17.010(11). It further declares that "[t]he provisions of this chapter shall be liberally construed to promote . . . full access to public records so as to assure continuing public confidence [in]

. . . governmental processes, and so as to assure that the public interest will be fully protected." Declarations of policy in an act, although without operative force in and of themselves, serve as an important guide in determining the intended effect of the operative sections. *Hartman v. State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975). Declarations of policy requiring liberal construction are a command that the coverage of an act's provisions be liberally construed and that its exceptions be narrowly confined. *Mead School Dist. 354 v. Mead Educ. Ass'n,* 85 Wn.2d 140, 145, 530 P.2d 302 (1975).

The expansive disclosure requirement as established by the language of the act is further solidified by reference to the statement in the voters pamphlet explaining the act when it was Initiative 276: "The initiative would require all . . . 'public record' of both state and local agencies to be made available for public inspection and copying by any person asking to see or copy a particular record . . ." Further, the statement expressly provided that the law "makes all public records and documents in state and local agencies available for public inspection and copying" except those exempted to protect individual privacy and to safeguard essential governmental functions. Official Voters Pamphlet, 1972 General Election, November 7, 1972, at pages 10, 108.

The state act closely parallels the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1970), *as amended,* (Supp. V, 1975), and thus judicial interpretations of that act are particularly helpful in construing our own. The Supreme Court in *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136–37, 44 L. Ed. 2d 29, 95 S. Ct. 1504 (1975), has observed that the FOIA "seeks 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' . . . virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions. . . . Finally, and more comprehensively, all 'identifiable records' must be made available to a member of the public on demand

[unless exempted]." The federal courts have also recognized a mandate to construe the FOIA broadly, and to construe the exemptions narrowly. *See, e.g., Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), *cert. denied,* 415 U.S. 977 (1974); *Theriault v. United States,* 503 F.2d 390 (9th Cir. 1974).

Despite the close parallel between the state act and the FOIA, the state act is more severe than the federal act in many areas. It provides attorney's fees to the successful party in the event legal action need be commenced to acquire records desired and costs are also recoverable against the agency up to $25 per day for each day the documents are wrongfully withheld. RCW 42.17.340(3). The FOIA does not have a similar penalty provision.

I

What is the appropriate standard of judicial review? Appellant asserts that he is invested with a public trust to protect the confidentiality of private information supplied by or obtained from the taxpayer. The statutes, he states, place it within his province to determine what must be disclosed and his exercise of discretion may not be disturbed by the judiciary unless it is arbitrary and capricious.

Agencies are afforded some discretion concerning the procedures whereby agency information is made available. RCW 42.17.290.[2] The provisions of that statute allow for adoption of rules and regulations to prevent destruction of records and interference with agency functions. The act, however, in listing the many exemptions from disclosure requirements in RCW 42.17.310, does not indicate the agency has authority to determine the scope of exemptions. On the contrary, it requires in subsection (4) of that statute

---

[2] "Agencies shall adopt and enforce reasonable rules and regulations, consonant with the intent of this chapter to provide full public access to public records, to protect public records from damage or disorganization, and to prevent excessive interference with other essential functions of the agency. Such rules and regulations shall provide for the fullest assistance to inquirers and the most timely possible action on requests for information. Nothing in this section shall relieve agencies from honoring requests received by mail for copies of identifiable public records." RCW 42.17.290.

that if the agency refuses, in whole or in part, inspection of any public record it "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld."

The action of the agency in withholding any record is explicitly made subject to de novo judicial review, with the burden of proof on the agency to establish that the refusal to permit public inspection and copying is required. RCW 42.17.340. Subsection (2) of that section also directs that "[c]ourts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others."

The statutory scheme establishes a positive duty to disclose public records unless they fall within the specific exemptions. Whether or not they do so is a function reserved for the judiciary by the act. The court is the proper body to determine the construction and interpretation of statutes. *State ex rel. O'Connell v. Slavin,* 75 Wn.2d 554, 452 P.2d 943 (1969); *State ex rel. Humiston v. Meyers,* 61 Wn.2d 772, 380 P.2d 735 (1963). Thus, even when the court's interpretation is contrary to that of the agency charged with carrying out the law, it is ultimately for the court to declare the law and the effect of the statute. *Rusan's, Inc. v. State,* 78 Wn.2d 601, 478 P.2d 724 (1970). There is no violation of the separation of powers theory in this function. It is within an orderly concept of checks and balances and the result of constitutional definition of the role of the judiciary. "Both history and uncontradicted authority make clear that '"[i]t is emphatically the province and duty of the judicial department to say what the law is."' [cases cited] even when that interpretation serves as a check on the activities of another branch or is contrary to the view of the constitution taken by another branch." *In re Juvenile Director,* 87 Wn.2d 232, 241, 552 P.2d 163 (1976).

The assessor, in essence, contends that the act leaves interpretation and enforcement of its requirements to the very persons it was designed to regulate. This is the same argument that we rejected in *Mead School Dist. 354 v. Mead Educ. Ass'n, supra,* in which we refused to leave application of the Open Public Meetings Act of 1971, RCW 42.30, "to the whim of the public officials whose activities it is designed to regulate." *Mead,* at 145. We again reject this approach; leaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization.

Our conclusion is similar to that reached by the federal court in *Department of Air Force v. Rose,* 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592 (1976). There the court found in the federal FOIA, particularly in its provision for a trial de novo, a clear design to have the court make the determination as to the scope of disclosure and exemption provisions, without limitation to the abuse of discretion standard.

## II

What effect does administrative inconvenience or difficulty have upon the disclosure requirements of the act? Appellant argues that the cost and excessive disruption to the department of assessments clearly outweighs the public benefit of disclosing limited factual material from the folios, particularly when such material is readily available elsewhere in the department.

RCW 42.17.270[3] and .290 do refer to administrative efficiency, but do so in the context of procedural considerations. They do not comment upon the scope of disclosure or limit substantive disclosure requirements. On the contrary,

---

[3]"Public records shall be available for inspection and copying, and agencies shall, upon request for identifiable public records, make them promptly available to any person. Agency facilities shall be made available to any person for the copying of public records except when and to the extent that this would unreasonably disrupt the operations of the agency. Agencies shall honor requests received by mail for identifiable public records unless exempted by provisions of this chapter." RCW 42.17.270.

as we have previously noted, RCW 42.17.340 directs that when courts review de novo the action of public officials, they "shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience . . . to public officials . . ." RCW 42.17.340(2). The act's provisions would appear to have specifically addressed appellant's arguments and declared them to be of insignificant impact compared with the stated public purpose of the act. The fact that the material may be available in other records is not a reason stated in the act for failure to disclose. *See Ackerly v. Ley,* 420 F.2d 1336 (D.C. Cir. 1969). Further, not all the information sought is available in records other than the folios.

### III

Are the folios exempt in their entirety under RCW 42.17.310(1)(i), the exemption for intra–agency memoranda? That statute provides: "The following shall be exempt from public inspection and copying . . . (i) preliminary drafts, notes, recommendations, and intra–agency memorandums in which opinions are expressed or policies formulated or recommended except that a specific record shall not be exempt when publicly cited by an agency in connection with any agency action." Appellant argues, correctly, that the purpose of this exemption is to allow frank and uninhibited discussion during the decision–making process. Under this rationale, he seeks to bring almost the entire contents of the records under the umbrella of "opinions expressed or policies formulated or recommended." See Appendix. This exemption, however, is inapplicable to the extent that exempt materials in the record "can be deleted from the specific records sought." RCW 42.17.310(2).

The FOIA has a similar provision found in subsection (b)(5).[4] There, according to federal courts, the policy is to

---

[4] "(5) inter–agency or intra–agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;" 5 U.S.C. § 552(b)(5).

protect the give and take of deliberations necessary to formulation of agency policy. *EPA v. Mink,* 410 U.S. 73, 87, 35 L. Ed. 2d 119, 93 S. Ct. 827 (1973). That privilege is not absolute and the executive must establish that documents contain predecisional opinions or recommendations of subordinates expressed as part of a deliberative or policy-making process. *NLRB v. Sears, Roebuck & Co., supra.* There must also be a showing by the executive that the disclosure of these opinions would be injurious or detrimental to the agency's deliberative or consultative function. *EPA v. Mink, supra* at 87.

■ The purpose of the exemption severely limits its scope. Disclosure must be shown to inhibit the flow of recommendations, observations, and opinions before the exemption can be invoked. Because the exemption is intended to safeguard the free exchange of ideas, recommendations, and opinions *prior to* decision, the opinions or recommendations actually implemented as policy lose their protection when adopted by the agency. RCW 42.17-.310(1)(i); *NLRB v. Sears, Roebuck & Co., supra* at 161; *American Mail Line, Ltd. v. Gulick,* 411 F.2d 696 (D.C. Cir. 1969); *Niemeier v. Watergate Special Prosecution Force,* 565 F.2d 967 (7th Cir. 1977); *Sterling Drug, Inc. v. FTC,* 450 F.2d 698 (D.C. Cir. 1971). Further, only those portions of documents actually reflecting policy recommendations and opinions may be withheld under the exemption. Factual data, even when contained within otherwise exempt memoranda, must therefore be produced because the rationale for the exemption, protection of the decision-making process, is wholly inapplicable to factual material. *EPA v. Mink, supra; Soucie v. David,* 448 F.2d 1067 (D.C. Cir. 1971); *Robbins Tire & Rubber Co. v. NLRB,* 563 F.2d 724 (5th Cir. 1977). Unless disclosure reveals and exposes the deliberative process, as opposed to the facts upon which a decision is based, the exemption cannot apply. *Mead*

*Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242 (D.C. Cir. 1977).

Applying these principles, we find that appellant has failed to meet his burden, under RCW 42.17.340(1), of showing that exemption of the folios is required. Although appellant argues to the contrary, the folios contain reports of essentially factual data. We recognize that such data as the condition of the street, the nature and quality of the view, and the architectural attractiveness of the home—which are among the items contained within the folios—are somewhat subjective evaluations. They are, nevertheless, factual material for purposes of RCW 42.17.310(1)(i) because they are so treated by the assessor's office. In the assessment process these factors are treated as raw factual data upon which final assessment figures are based; they are not mere recommendations which are themselves subject to further deliberation and consideration. As stated in *Moore–McCormack Lines, Inc. v. I.T.O. Corp.,* 508 F.2d 945, 948 (4th Cir. 1974), "[the characterizations of street condition, view, and architectural attractiveness, etc.] depend on the observation and expertise of the [reporting deputy assessor] but [none] reflects the deliberative processes of decision or policy–making." Therefore, the rationale for the exemption is inapplicable, and the materials sought by respondent cannot be shielded under this exemption.

### IV

Are the folios exempt in their entirety under RCW 42.17.310(1)(c)? This section establishes exemption for "[i]nformation required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would violate the taxpayer's right to privacy or would result in unfair competitive disadvantage to such taxpayer." The respondent did not seek disclosure of any income data on any property, depreciation figures on commercial property, site plans which show floor plans of any structure, data unrelated to value or

assessment, information pertaining to access to any premises or to security measures or devices on any premises. Nonetheless, appellant argues that he is precluded from disclosing information sought from the folios by RCW 42.17.310(1)(c).

To violate the terms of that statute, there must be a violation of the taxpayer's right to privacy. "Right to privacy" is not defined by this statute but some indication of its scope is found in RCW 42.17.260(1) and 42.17.340(2). RCW 42.17.260(1) provides: "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records. To the extent required to prevent an *unreasonable invasion* of personal privacy, an agency shall delete identifying details when it makes available or publishes any public record; . . ." (Italics ours.) No such unreasonable invasion is either alleged or proved in this case. RCW 42.17.340(2) provides for a public policy of free and open examination, "even though such examination may cause inconvenience or embarrassment to public officials or others." "Others", under any reasonable reading of the statute, includes taxpayers whose records are in the assessor's office.

These peripheral insights into the drafters' intent of the scope of the protected right of privacy are not inconsistent with an accepted definition of the right of privacy. Inasmuch as the statute contains no definition of the term, there is a presumption that the legislature intended the right of privacy to mean what it meant at common law. *New York Life Ins. Co. v. Jones*, 86 Wn.2d 44, 47, 541 P.2d 989 (1975). The most applicable privacy right would appear to be that expressed in tort law. Tort liability for invasions of privacy by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D, at 383 (1977): "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and

(b) is not of legitimate concern to the public." The comment to the Restatement illustrates what nature of facts are protected by this right to privacy.

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

Restatement, *supra* at 386.

The standard and analysis of the Restatement appear well suited to fill the definitional void of RCW 42.17-.310(1)(c). In addition to the fact that the tort right is the most widely recognized and established definition of the legal right to privacy, the context in which that right has emerged and the considerations surrounding its development are uniquely analogous to the values and interests which subsection (1)(c) appears designed to protect. We therefore adopt the Restatement standard as the controlling one.

This approach is consistent with the case law which has developed in the privacy area under the FOIA. Although the FOIA has no exemption directly analogous to RCW 42.17.310(1)(c), three subsections of 5 U.S.C. § 552(b) have some similarities with this exemption. Subsection (4) exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential;" subsection (6) exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;" and subsection (7) exempts "investigatory records compiled for

law enforcement purposes, but only to the extent that the production of such records would . . . constitute an unwarranted invasion of personal privacy . . ." Thus, although FOIA case law cannot apply directly to RCW 42.17-.310(1)(c) in the manner which is possible under the exemption for intra–agency memoranda, certain helpful privacy principles do emerge from FOIA cases.

One established principle under the FOIA is that an agency's promise of confidentiality or privacy is not adequate to establish the nondisclosability of information; promises cannot override the requirements of the disclosure law. *Petkas v. Staats,* 501 F.2d 887 (D.C. Cir. 1974); *Robles v. EPA,* 484 F.2d 843 (4th Cir. 1973); *Pharmaceutical Mfrs. Ass'n v. Weinberger,* 411 F. Supp. 576 (D.D.C. 1976). Therefore, we must reject appellant's claim of exemption premised upon such promises.

We are unaware of any federal cases in which the Restatement standard of privacy was specifically adopted under the FOIA. Nevertheless, the federal standard reflects the same considerations applicable to the privacy right expressed in the Restatement. Under the FOIA, the privacy–related exemptions involve a balancing test, weighing the general public interest in access to governmental information against the specific privacy interests asserted. *See Department of Air Force v. Rose,* 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592 (1976) and cases cited therein; H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11 (1966); S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). This balance is to be tilted in favor of disclosure. *Ditlow v. Shultz,* 517 F.2d 166 (D.C. Cir. 1975); *Getman v. NLRB,* 450 F.2d 670 (D.C. Cir. 1971). The balancing concept under the FOIA is unique to the privacy exemption, as normally no inquiry into the utility of the information is permissible. *Rural Housing Alliance v. United States Dep't of Agriculture,* 498 F.2d 73 (D.C. Cir. 1974). This standard meshes well with the Restatement's protection against the release of highly offensive materials while safeguarding the public's legitimate interests.

In this case, we reach only the first step in the balancing process—determining whether the release of the materials sought would be highly offensive to a reasonable person. The appellant has not demonstrated that these records fall within this category. There is nothing in the materials which the trial judge ordered disclosed that reveals intimate details of anyone's private life in the Restatement sense. Thus, the portions of the folios ordered disclosed fail to violate any right to privacy.

## V

■■ Does RCW 84.40.020 interpret the public records disclosure act? That statute reads in part: "All real property in this state subject to taxation shall be listed and assessed every year, with reference to its value on the first day of January of the year in which it is assessed. Such listing and all supporting documents and records shall be open to public inspection during the regular office hours of the assessor's office: *Provided,* That confidential income data is exempted from public inspection pursuant to RCW 42.17.310." It is argued by the Snohomish County Prosecuting Attorney as amicus curiae that this statute is unconstitutional as it seeks to amend or repeal part of Initiative 276 because the two statutes allegedly contain irreconcilably conflicting provisions about the public's ability to inspect and copy assessor's records pertaining to real property taxes. We do not reach these arguments because RCW 84.40.020 seeks to interpret RCW 42.17.310 as it relates to real property listing and assessment records. The two acts were enacted within a short time of each other; RCW 84.40.020 was passed in the legislative session immediately following the passage of Initiative 276. Laws of 1973, ch. 69. Because the two statutes relate to one another and the same subject matter, we will "read the sections as constituting one law to the end that a harmonious total schema which maintains the integrity of both is derived." *Beach v. Board of Adjustment,* 73 Wn.2d 343, 346, 438 P.2d 617 (1968). When the 1973 amendment to RCW 84.40.020 is

read in pari materia with RCW 42.17, no significant departure from the public disclosure act is apparent. The legislature apparently sought in 1973 to remove any confusion created by the passage of the public disclosure act in RCW 42.17.310(1)(c) regarding the disclosure status of real property listing and supporting documents in the possession of assessors. It did so by stating a more specific and supplemental rule to the disclosure provisions of RCW 42.17. It explicitly established that a protected area of privacy would be "confidential income data." The overall policy of RCW 42.17 must be read into the 1973 amendment to RCW 84.40.020.

Our discussion of RCW 42.17 has been directed to the philosophy of that act as it applies to tax records generated and maintained in the process of administration of ad valorem taxes. We do not comment on specific problems raised by the act as applied to excise taxes administered by the Washington Department of Revenue under RCW Title 82. Neither do we forecast what the action of the trial court must be in its hearing in this case on the remaining issues before it. Significant issues, including a determination of whether appellant will be subject to the punitive provisions of the act, remain for decision.

The act sets forth strict standards for administrators to meet: "Responses to request for public record shall be made promptly by agencies. Denials of requests must be accompanied by a written statement of the specific reasons therefor." RCW 42.17.320. This statement "shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.17.310(4). If the agency fails to provide the required written statement by the end of the second business day following denial of inspection, review of the records in question can be submitted directly to the superior court. RCW 42.17.320 and .340(2). Although the court procedures subsequently ensuing to enforce the rights of disclosure may entail delay and costs, the policy of the act allows for

award of fees and fines, where appropriate. Strict enforcement of these provisions where warranted should discourage improper denial of access to public records and adherence to the goals and procedures dictated by the statute.

Affirmed.

WRIGHT, C.J., and HAMILTON, STAFFORD, BRACHTENBACH, HOROWITZ, and DOLLIVER, JJ., concur.

ROSELLINI and HICKS, JJ., concur in the result.

## APPENDIX

The blacked-out areas on the following pages are accompanied by numerical notations which refer to the exemptions claimed by appellant. The numbers used correspond to the following "key":

Key
No.

A. RCW 42.17.310(1)(c)

1. Information required of taxpayer in connection with the assessments if the disclosure of the information to other persons would violate the taxpayer's right to privacy.
2. Information required of taxpayer, disclosure of which would result in unfair competitive disadvantages to such taxpayer.

B. RCW 42.17.310(1)(i)

3. Preliminary drafts, notes, and recommendations of agency.
4. Intra-agency memorandums in which opinions are expressed.
5. Intra-agency memorandums formulating or recommending policy.

C. RCW 42.17.310(2)

6. Information descriptive of readily identifiable person or person.

D. RCW 42.17.010(11)

7. Protection of all persons from harassment and unfounded allegations.

**KING COUNTY**
**RESIDENTIAL PROPERTY RECORD**

**RURAL**

099 SHEET ___ OF ___

| | LAND | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 100 | Zone Actual | / | / | | | | | |
| 101 | Zone Conformity | | | | | | | |
| 102 | Hgst. & Best Use | | | | | | | |
| 103 | Unit | 1 | FF | 2 | SF | 3 | AC | ST |
| 104 | Lot Width | | | | | | | |
| 105 | Lot Depth | | | | | | | |
| 106 | Square Feet or Acres | | | | | 3 | 3 | |
| 107 | Lot Width or Acres (useable) | | | | | | | |
| 108 | Lot Depth (useable) | | | | | | | |
| 110 | Lot Wd. (standard) | | | | | | | |
| 111 | Lot Depth (standard) | | | | | | | |
| 112 | Unit Value | | | | | | | |
| 114 | Representative Site | | | | | | | |
| 115 | Irregular | 1N | | | | | | |
| 116 | Corner | 1N | | | | | | |
| 117 | Grade | 1 | LW | 2 | E | 3 | HG | |
| 118 | Slope | | LV | 2 | SL | 3 | SP | BK |
| 119 | Street Access | | | | | | | |
| 120 | Water Front | | N | 2 | SD | 3 | LK | RV |
| 121 | Dock Suitability | 1N | | 2P | | 3Y | | |
| 122 | Tide Land | | | 2Y | | | | |
| 123 | Alley | | | 2Y | | | | |
| 124 | Cul De Sac | | | 2Y | | | | |
| 125 | Thru Street | 1N | | | | | | |
| 126 | Street Front | 1N | | | | | | |
| 127 | Curbs & Gutters | | | 2P | | 3Y | | |
| 128 | Sidewalks | | | 2P | | 3Y | | |
| 129 | Street Surface | | C | 2 | BT | 3 | O | GR |
| 130 | Street Condition | | | | | | | |
| 131 | Street Traffic | | | | | | | |
| 132 | Street Lights | | | | | | | |
| 133 | Water | | | | | PH | | B |
| 134 | Water System | | | | | | | |
| 135 | Sanitary Sewers | | | 2Y | | | | |
| 136 | Storm Sewers | | | 2Y | | | | |
| 137 | Underground Utilities | | | 2P | | 3Y | | |

| | VIEW | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 140 | View Lot | | | 2Y | | | | |
| 141 | View Olympic Range | | | | | | | |
| 142 | View Cascade Range | | | | | | | |
| 143 | View Mt. Rainier | | | | | | | |
| 144 | View Pug. Sound | | | | | | | |
| 145 | View Lake | | | | | | | |
| 146 | View River | | | | | | | |
| 147 | View City | | | | | | | |
| 148 | Territorial View | | | | | | | |
| 149 | View Utilization | | | | | | | |

| | NEIGHBORHOOD AND TOTAL PROPERTY | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 151 | Predominate Use | | | 2N | | 3O | | |
| 152 | Arch. Attractiveness | | | | | | | |
| 153 | Landscaping | | | | | | | |
| 154 | Unit Balance | | | | | | | |
| 155 | Easmts. & Restrs. | | | | | | | |
| 156 | External Nuisances | | | | | | | |
| 157 | Conf. Gen. Neigh. | | | | | | | |
| 158 | Conf. Immed. Neigh. | | | | | | | |
| 159 | Prox. to Trans. | | | | | | | |
| 160 | Prox. to Soc. Service | | | | | | | |
| 161 | Prox. to Public Service | | | | | | | |
| 162 | Trend | | | | | | | |
| 163 | Planning | | | | | | | |
| 164 | Market Demand | | | | | | | |
| 165 | Land Use Code | | | | | | | |
| 166 | Base Lot Value | | | | | | | |
| 167 | Permanent Rev. Needed | | | | | | | |
| 168 | Obsolescence (Refers to land value) | | | | | | | |

| | STAFF | | |
|---|---|---|---|
| 170 | Land Data Date | | |
| 171 | Appraiser No. | | |
| | Reviewer No. | | |
| | Date | | Sale |

UNDERWATER TIDELANDS

PERMIT INFORMATION

PLAT OF BUILDING     Scale 1 CM =

ASSESSORS FORM 9 66
REV 1-1-76

## BUILDING DATA

| MAJOR | MINOR | FOLIO |
|---|---|---|

### 12 EXTERIOR

| | |
|---|---|
| Bd. & Bm. | Shingle |
| Rustic | Shake |
| Ced./Std. | Conc. Blk. |
| Plywood | |
| Brick Veneer | % |
| Stone | % |
| Other | |

### 13 ROOF

| | |
|---|---|
| Hip | Comp. |
| Gable | Tile/Slate |
| Shed | Tar/Gravel |
| Flat | Shingle |
| Gutters | Drain |
| Shake | Lgt. |
| Other | |

### 14 WINDOWS

| | |
|---|---|
| Wood | Steel |
| Alum. | Sl/Gl/Dr |
| Other | |

### 15 FOUNDATION

| | |
|---|---|
| Concrete | Thick |
| Concrete Block | |
| Post & Pier | |
| Other | |

### 16 FLOOR CONST.

| | |
|---|---|
| Flr. Joists | |
| Bridged | |
| Post & Beam | |
| Sheet Decking | |
| Concrete Slab | |
| Other | |

### 17 ELECTRIC

| | |
|---|---|
| Int. Fix. | SS S G |
| Ext. Fix. | SS S G |
| Other | |

### 18 CONST CLASS

| | |
|---|---|
| Single | Sub. Std. |
| Double | Std. |
| Solid | Good |
| Pre. Fab. | Special |

Code

### 19 ROOM DETAIL

| | B 1 A ½ 2 |
|---|---|
| No. | |
| Entry | |
| Dining | |
| Fa/Da/R | |
| Bedroom | |
| Bath | |
| Living | |
| Kitchen | |
| Utility | |

Grade
Unf. ½ Floor Area
Sq. Ft.
Unf. Full Floor Area
Sq. Ft.

### 20 BUILT-INS NO.

| | |
|---|---|
| B.BQ. | Disp. |
| D.W. | Intercom |
| Fan & Hd. | App. Is. |
| Vacuum | Stereo |
| Reg. & Ov. | |
| Dbl. Oven | |
| Other | |

### 21 ATTIC

| | |
|---|---|
| None | |
| Unfinished | |
| Finished Area | |
| Grade | |
| Stwy. | |
| Other | |

### 22 BASEMENT

| | |
|---|---|
| None | Part | Full |
| Finished Rms. No. | |
| Finished Area | |
| Grade | SS S G |
| Daylite Bsmt. | |
| Garage | |
| Other | |

### 23 HEATING

| | |
|---|---|
| Oil | Gas | Elec. |
| F/W | Grav. | Rdnt. |
| BB | F.A. | HW |
| Conversion | |
| Adeq. | Inadeq. |
| Other | |

### 24 INSULATION

| | |
|---|---|
| Walls | Ceiling |
| Other | |

### 25 KITCHEN

| | |
|---|---|
| Ext. Area | Adeq. Inad. |
| Cabinets | Adeq. Inad. |
| Cab. Matl. | SS S G |
| Ctr. Matl. | SS S G |
| Remodeled | No Yes |

### 26 FLOORS

| | |
|---|---|
| HW | Conc. | Tile |
| SW | VWC | Lino. |
| Other | |

### 27 PLUMBING

| | |
|---|---|
| Tub | Basin |
| Toilet | Shower St. |
| Baths Full | ¾ ½ |
| Grade | SS S G |
| Sink | HW Tank |
| Laundry Conn. | |
| Other Sgl. Outlets | |
| Roughed in Baths | |
| Other | |

### 28 FIREPLACE NO.

| | |
|---|---|
| Bsmt. | 1st. | 2nd. |
| Sgl. | Mult. | Fr. Std |
| Brick | | |
| Grade | SS S G |
| Other | |

### 29 PORCH

| | | | |
|---|---|---|---|
| No. 1 | OP | Enc. | St. |
| No. 2 | OP | Enc. | St. |
| No. 3 | OP | Enc. | St. |
| Other | | | |

### 30 DECK

| | | | |
|---|---|---|---|
| No. 1 | | Wd | Cvd. |
| No. 2 | | Wd | Cvd. |
| No. 3 | Conc. | | Cvd. |
| No. 4 | | | Cvd. |

### 30A SOURCE OF DATA

| | |
|---|---|
| Owner | |
| Tenant | |
| N.H. | |
| N.H. Card | |
| Card Returned | |

### BUILDING DATA

| | | | | |
|---|---|---|---|---|
| 200 | Condo | Coop | Poss. Int. Units | |
| 201 | Use Type | | | |
| 202 | Year Built 19 | Cost Year 19 | | |
| 203 | Depreciation Table | | | |
| 204 | Functional | | | |
| 205 | Condition | | | |
| 206 | Workmanship | | | |
| 207 | No. of Stories | | | |
| 208 | Total Rooms | | | |
| 209 | Entry | | | |
| 210 | Dining | | | |
| 211 | Fam/Den/Rec. | | | |
| 212 | Bedrooms | | | |
| 214 | Utility Type Rooms | | | |
| 215 | No. of Built-ins | | | |
| 216 | Adeq. Electric | | | |
| 217 | Adeq. Plumbing | | | |
| 218 | Adeq. Garage | | | |
| 219 | Adeq. Storage | | | |
| 220 | Bsmt. Garage | Area | | |
| 221 | Unfin. Attic | Area | | |

### BUILDING COST DATA

| | | | |
|---|---|---|---|
| 229 | Per Cent Complete | | |
| 230 | Eff. Yr. 19 | Obso. | Not Cond. |
| 231 | Grade | | Variation |
| 232 | 1st. Floor | Area | |
| 233 | Upper Floors | Area | |
| 234 | Half Story | Area | |
| 235 | Unf. Floors ½ | Full Area | |
| 236 | Fin. Attic | Grade Area | |
| 237 | Stway. to Unf. Attic | | |
| 238 | Total Bsmt. | Area | |
| 239 | Fin. Bsmt. | Grade | |
| 240 | Daylite Bsmt. | 1M 2Y | |
| 241 | Ext. Brick | Ext. Stone | |
| 242 | Heating Source | | |
| 243 | Heating System | | |
| 244 | Heating | Area | |
| 245 | Central Cooling Costs | $ | |
| 246 | Bathrooms | Full ¾ ½ | |
| 247 | H W. Tank/Sink/Laundry | | |
| 248 | Other Single Plumbing Outlets | | |
| 249 | Fireplaces | Single Multi-fl. Fr.-Std | |
| 250 | Fireplace Add Outlets | | |
| 252 | Porch | 1 OK 2 OP 3 En Area | |
| 253 | Porch | 1 OK 2 OP 3 En Area | |
| 254 | Porch | 1 OK 2 OP 3 En Area | |
| 255 | Additional Costs | $ | |
| 256 | Garage Am. | Area | |

### ACCESSORY IMPROVEMENTS

| | | | |
|---|---|---|---|
| 258 | Gar. Det. | Grade | Area |
| 259 | Eff. Year 19 | | Net Cond. % |
| 260 | Carport | | Area |
| 262 | No. of Parking Stalls | | |
| 266 | Pool | Grade | Area |
| 267 | Pool Eff. Yr. 19 | | Net Cond. % |
| 268 | 1 Poured 2 Gunite 3 Fib. gl. 4 Plastic | | |
| 269 | Concrete | | Area |
| 270 | Asphalt | | Area |
| 271 | Other Misc. Impv. Value | $ | |
| 272 | Permanent Review Needed | | |

### MISCELLANEOUS IMPROVEMENTS

| Year | Items | Const | Gr | Floor | Roof | Dimensions | Area | S.F.V. |
|---|---|---|---|---|---|---|---|---|

### PRINCIPAL BUILDING

| Fl | Dimensions | Area | Fl | Dimensions | Area | Fl | Dimensions | Area |
|---|---|---|---|---|---|---|---|---|

### STAFF

| | | |
|---|---|---|
| 282 | Building Data Date | |
| 283 | Appraiser No. | |
| 284 | Reviewer No. | |

### REMARKS

QTR  SEC  TWP  RGE  COMPUTE DATE:  ACC NO
ADDITION  FOLIO
ADDRESS  BLK  LOT  AREA
BATCH  PAGE  LAND CNLY  SHEET  1 OF 1

------MARKINGS------  ----SALES HISTORY------
AFF
DATE
CODE
SALE
ADJ

---VALUE ESTIMATES---  ---SALES RATIO---
LAND  IMP  TOTAL  C COMP
PREV  $83,500  $83,500  NO W/F
COST  NO M/S
ENV  DELETE
OWN S  DO NOT POST
COMMENT  RVWR=  167=  272=  DATE

------ LAND DATA ------
100 ZONE ACT  SINGLE
101 ZONE CONFORMITY
102 HGT,BEST USE
103 UNIT  SITE
104 LOT WIDTH  9
105 LOT DEPTH  9
106 SQ FT/ACRES  2342
107 LOT WIDTH USE
108 LOT DEPTH USE
110 LOT WIDTH STD
111 LOT DEPTH STD
113 UNIT VALUE
114 REPRES SITE
115 IRREGULAR  YES
116 CORNER  YES
117 GRADE  EVEN
118 SLOPE  LVL
119 STREET ACCESS  S
120 WATERFRONT
121 DOCK SLIT
122 TIDE LAND

123 ALLEY
124 CUL DE SAC
125 THRU STREET  YES
126 STREET FRONT  YES
127 CURBS,GUTTERS
128 SIDEWALKS
129 STREET SURF  CONCRETE
130 STREET CONDITION
131 STREET TRAFFIC
132 STREET LIGHTS
133 WATER  PRIVATE
134 WATER SYSTEM
135 SANITARY SEWER
136 STORM SEWER
137 UGND UTILITIES
140 VIEW LOT
141 VIEW,CLYMPICS
142 VIEW,CASCADES
143 VIEW,MT RAINIER
144 VIEW,PUGET SOUND
145 VIEW,LAKE

146 VIEW,RIVER
147 VIEW,CITY
148 VIEW,TERRITORIAL
149 VIEW,UTILIZATION
151 PRED USE  SINGLE
152 ARCH ATTRACTVNESS
153 LANDSCAPING
154 UNIT BALANCE
155 ESMTS,RESTRICT
156 EXT NUISANCES
157 CONF GEN NEIGH
158 CONF IMMED NEIGH
159 PROX TO TRANSP
160 PROX TO SOC SERV
161 PROX TO PUB SERV
162 TREND
163 PLANNING
165 LAND USE CODE
166 BASE LOT VALUE
168 OBSOLESCENSE