# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 09 2013

Madsen, C.J.

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on May 9, 2013

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RESIDENT ACTION COUNCIL, | ) | |
| | ) | |
| Respondent, | ) | No. 87656-8 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| SEATTLE HOUSING AUTHORITY, | ) | |
| | ) | |
| Appellant. | ) | Filed     MAY 09 2013 |
| | ) | |

GONZÁLEZ, J.—This direct appeal concerns the public disclosure of Seattle Housing Authority (SHA) grievance hearing decisions pursuant to the Public Records Act (PRA), chapter 42.56 RCW. SHA hearing decisions contain welfare recipients' personal information. This information is exempt from disclosure under the PRA, but the PRA requires redaction and disclosure of public records insofar as all exempt material can be removed. Accordingly, the PRA requires redaction of welfare recipients' exempt information contained in SHA's grievance hearing decisions. Applicable federal regulations do not exempt the hearing decisions from disclosure, nor do applicable federal regulations preempt the PRA. Thus, the trial court properly ordered SHA to produce the grievance hearing decisions pursuant to the redaction requirement of the PRA, properly ordered SHA to produce the responsive records in

electronic format and to establish necessary policies and procedures to ensure compliance with the PRA, and properly awarded statutory damages. We affirm the trial court and award respondent Resident Action Council (RAC) its attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

SHA is a local housing authority that provides federally subsidized public housing in Seattle. Disputes between individual tenants and SHA are resolved through a grievance hearing process resulting in a written decision from a hearing officer. Pursuant to applicable federal regulations, an unredacted copy of each decision is placed in the tenant's file at SHA and a separate redacted copy is placed in a central file. *See* 24 C.F.R. § 966.57(a). RAC is a group of SHA tenant leaders seeking copies of all SHA grievance hearing decisions dated June 17, 2007, or later. On June 17, 2010, RAC made a request under the PRA for copies of all such hearing decisions and also requested that such copies be provided in electronic format to minimize reproduction costs.

SHA produced redacted hard copies of the hearing decisions without explanation or comment. RAC then complained that SHA had failed to explain its redactions, that the hearing decisions were inconsistently redacted and some of the decisions had been overly redacted, that SHA had included numerous duplicates and nonresponsive documents (and was seeking compensation for production of those

documents), and that the documents had been delivered in hard copy with a "messenger fee" rather than in electronic format as requested. SHA failed to respond.

RAC then sought relief in superior court under the PRA, seeking costs, fees, and statutory damages, and an injunction requiring SHA to produce copies of the hearing decisions (without any unauthorized redactions and in electronic format). RAC also sought an injunction ordering SHA to establish (1) published procedures for requesting documents, (2) a published list of relevant PRA exemptions, (3) a policy for redacting grievance hearing decisions, (4) a policy for providing explanations for withholding or redacting documents, and (5) a policy of providing records in electronic format when requested. SHA argued in part that the unredacted hearing decisions are not subject to the disclosure or redaction requirements of the PRA and that it already disclosed the redacted decisions in full.

The trial court granted RAC the relief it requested. The trial court first ordered SHA to produce "all grievance hearing decisions subject to RAC's request" with "[o]nly names and identifying information of SHA tenants . . . redacted," with a code or marks to distinguish among redacted items, and in electronic format. Clerk's Papers at 171. In a subsequent order, the trial court also directed SHA to pay statutory damages at a rate of $25 per day, to publish procedures for requesting records, to publish a list of relevant exemptions, to establish a policy for redacting grievance hearing decisions, to establish a policy for providing written explanations whenever withholding records under the PRA, and to provide electronic records when requested.

SHA appealed and the case was certified and transferred to this court. SHA argues (1) that the unredacted hearing decisions within individual tenant files are exempt from disclosure under the PRA and thus, that the only relevant documents subject to disclosure were produced without (additional) redaction; (2) that it has no obligation to produce documents in electronic format; (3) that it has no duty to explain redactions that are made pursuant to federal regulations; (4) that it has wide discretion in determining how to redact documents under said federal regulations; and (5) that it has no duty to publish procedures for redactions conducted pursuant to federal regulations. RAC disagrees and seeks fees on appeal pursuant to RCW 42.56.550(4). *See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 271, 884 P.2d 592 (1994) (*PAWS* II).

## II. STANDARD OF REVIEW

Agency action taken or challenged under the PRA is reviewed de novo. RCW 42.56.550(3); *PAWS* II, 125 Wn.2d at 252. The burden is on the agency to establish that an exemption to production applies under the PRA. RCW 42.56.550(1). A trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

## III. ANALYSIS

Under the broad provisions of the PRA, SHA's unredacted hearing decisions must be redacted and produced. SHA operates as a local agency in cooperation with

the federal Department of Housing and Urban Development (HUD). Although SHA is subject to limited federal regulations, SHA also remains subject to state laws such as the PRA. The PRA promotes open government by requiring disclosure of public records upon request. The PRA applies to SHA's unredacted grievance decisions, and thus the trial court properly ordered SHA to redact and produce those documents. The trial court also acted within its discretion when it ordered electronic production and when it required SHA to establish necessary policies and procedures to ensure compliance with the PRA. The trial court also properly awarded statutory damages.

A.     Legal Background

  1.     *Local Housing Authorities and Cooperative Federalism*

SHA is a local housing authority that operates within an established framework of federal and state cooperation. The United States Housing Act of 1937 allows for federal assistance to local housing authorities while maintaining and promoting state and local control. *See* 42 U.S.C. § 1437f(b)(1) (authorizing "annual contributions contracts" with local housing authorities); 42 U.S.C. § 1437(a)(1)(C) (establishing policy of "vest[ing] in public housing agencies that perform well[] the maximum amount of responsibility and flexibility in program administration"). This sort of framework, "in which state agencies are given broad responsibility and latitude in administering welfare assistance programs," has been described as a form of "cooperative federalism." *Turner v. Perales*, 869 F.2d 140, 141 (2d Cir. 1989); *see also King v. Smith*, 392 U.S. 309, 316-17, 88 S. Ct. 2128, 20 L. Ed. 2d 1118 (1968);

*Shapiro v. Thompson*, 394 U.S. 618, 645, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (Warren, C.J., dissenting) ("Federal entry into the welfare area can . . . be best described as a major experiment in 'cooperative federalism,' combining state and federal participation to solve the problems of the depression." (citation omitted)), *overruled on unrelated grounds in Edelman v. Jordan*, 415 U.S. 651, 671, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). The Washington State Legislature authorized the creation of local housing authorities such as SHA, *see* RCW 35.82.040, and also has authorized such local housing authorities to "do any and all things necessary or desirable to secure the financial aid or cooperation of the federal government," RCW 35.82.200(1). Accordingly, SHA has coordinated with HUD to receive federal assistance and is now subject to certain federal regulations. *See, e.g., Lankford v. Sherman*, 451 F.3d 496, 510 (8th Cir. 2006) (noting that in "a system of cooperative federalism . . . once the state voluntarily accepts the conditions imposed by Congress, the Supremacy Clause obliges it to comply with federal requirements").

SHA's dispute resolution process must comply with relevant federal regulations. Specifically, disputes between individual tenants and SHA must be resolved through a grievance hearing process established pursuant to 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966. Under 24 C.F.R. § 966.57, the secretary of HUD has required public housing authorities (PHAs) such as SHA to ensure that disputes are resolved by hearing officers who must provide written decisions. The federal regulations also require PHAs to ensure that one copy of each written decision is

"retain[ed] . . . in the tenant's folder" and another copy "with all names and identifying references deleted" is on file and "made available for inspection by a prospective complainant, his representative, or the hearing panel or hearing officer." 24 C.F.R. § 966.57(a). A "complainant" is defined as "any tenant whose grievance is presented to the PHA," and a "grievance" is defined as "any dispute which a tenant may have . . . [under] the individual tenant's lease or PHA regulations . . . ." 24 C.F.R. § 966.53(a), (b). Pursuant to these regulations, SHA retains unredacted copies of hearing decisions in individual tenant files and also retains a central file of redacted hearing decisions. The dispute in this case arises out of RAC's request for disclosure of these documents.

SHA remains subject to state law. State law establishes local housing authorities in the first place, defines their powers and obligations, and addresses various ancillary matters related to their operation. *See* ch. 35.82 RCW (housing authorities law). Thus, state law applies to SHA except insofar as federal law has preempted a given state law. *See, e.g., PAWS* II, 125 Wn.2d at 265.

2. *Disclosure and Production under the PRA*

The PRA is a "strongly worded mandate for broad disclosure of public records." *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978). The PRA is to be "liberally construed and its exemptions narrowly construed . . . to assure that the public interest will be fully protected." RCW 42.56.030. Our interpretation of the PRA's provisions will continue to be grounded in the PRA's underlying policy

and standard of construction. We will also avoid absurd results. *Hangartner v. City of Seattle*, 151 Wn.2d 439, 448, 90 P.3d 26 (2004). In this difficult area of the law, we endeavor to provide clear and workable guidance to agencies insofar as possible. *See Bellevue John Does 1-11 v. Bellevue Sch. Dist. #405*, 164 Wn.2d 199, 218-19, 189 P.3d 139 (2008).

The PRA requires state and local agencies to "make available for public inspection and copying all public records, unless the record falls within the specific exemptions of [the PRA] or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). A "public record" is defined broadly to include "any writing containing information relating to the conduct of government or [a governmental function]" that is "prepared, owned, used, or retained" by any state or local agency. RCW 42.56.010(3); *see also Confederated Tribes of Chehalis Reservation v. Johnson*, 135 Wn.2d 734, 746-47, 958 P.2d 260 (1998).

The PRA requires each relevant agency to facilitate the full disclosure of public records to interested parties. An agency must publish its methods of disclosure and the rules that will govern its disclosure of public records. RCW 42.56.040(1). A requester cannot be required to comply with any such rules not published unless the requester receives actual and timely notice. RCW 42.56.040(2). More generally, an agency's applicable rules and regulations must be reasonable and must provide full public access, protect public records from damage or disorganization, and prevent excessive interference with other essential functions of the agency. RCW 42.56.100.

The agency's rules and regulations also must "provide for the fullest assistance to inquirers and the most timely possible action on requests for information." *Id.*; *see also* RCW 42.56.520 (agency must respond promptly but can notify requester it needs a reasonable amount of time to determine appropriate further response). An agency must explain and justify any withholding, in whole or in part, of any requested public records. RCW 42.56.070(1), .210(3), .520. Silent withholding is prohibited. *Rental Hous. Ass'n v. City of Des Moines*, 165 Wn.2d 525, 537, 199 P.3d 393 (2009); *PAWS II*, 125 Wn.2d at 270. Finally, agency actions taken or challenged under the PRA are subject to de novo review, and any person "who prevails against an agency" is awarded costs and fees and, in the discretion of the court, a statutory penalty. RCW 42.56.550(4).

The PRA's mandate for broad disclosure is not absolute. The PRA contains numerous exemptions that protect certain information or records from disclosure and the PRA also incorporates any "other statute" that prohibits disclosure of information or records. *See* RCW 42.56.070, .230-.480, .600-.610. The PRA's exemptions are provided solely to protect relevant privacy rights or vital governmental interests that sometimes outweigh the PRA's broad policy in favor of disclosing public records. *See Limstrom v. Ladenburg*, 136 Wn.2d 595, 607, 963 P.2d 869 (1998).

Exemptions are to be narrowly construed and limited in effect. First, the PRA's purpose of open government remains paramount, and thus, the PRA directs that its exemptions must be narrowly construed. RCW 42.56.030. Second, the PRA

provides that exemptions "are inapplicable to the extent that information, the disclosure of which would violate personal privacy or vital governmental interests, can be deleted from the specific records sought." RCW 42.56.210(1); *see also* RCW 42.56.070. We have interpreted this redaction provision to mean that an agency must produce otherwise exempt records insofar as redaction renders any and all exemptions inapplicable. *See PAWS* II, 125 Wn.2d at 261 ("Portions of records which do not come under a specific exemption must be disclosed."); *Hearst*, 90 Wn.2d at 132 (noting that exemptions are "inapplicable to the extent that exempt materials in the record 'can be deleted'" (quoting former RCW 42.17.310(2) (1977))). If it is information within a record that is exempted, such information usually can be effectively redacted. On the other hand, if a type of record is exempted then meaningful redaction generally is impossible, unless redaction actually can transform the record into one that is outside the scope of the exemption. For example, a document containing attorney work product may be exempted as a "[r]ecord[] that . . . would not be available . . . under the rules of pretrial discovery," RCW 42.56.290, but redaction might transform the record into one that actually would be available in pretrial discovery, and thus, into a different type of record—one that no longer falls under the relevant exemption and which would have to be disclosed in redacted form. *See Sanders v. State*, 169 Wn.2d 827, 854, 858, 240 P.3d 120 (2010). As to most record exemptions, however, such transformation will be impossible. *See, e.g.*, RCW 42.56.370 (exempting "[c]lient records maintained by an agency that is a domestic

violence program"). Finally, even records that are otherwise exempt may be inspected or copied if a court finds "that the exemption of such records is clearly unnecessary to protect any individual's right of privacy or any vital governmental function." RCW 42.56.210(2); *see Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 567-68, 618 P.2d 76 (1980) (burden shifts to the party seeking disclosure to establish exemption is clearly unnecessary).

The PRA contains numerous information and record exemptions developed over time and narrowly tailored to specific situations in which privacy rights or vital governmental interests require protection. In all, the PRA currently contains 141 exemptions. *See* RCW 42.56.230-.480, .600-.610. The vast majority of these exemptions are *categorical*, exempting without limit a particular type of information or record. *See, e.g.*, RCW 42.56.230(5) (exempting "debit card numbers"). A limited number of these exemptions are *conditional*, exempting a particular type of information or record but only insofar as an identified privacy right or vital governmental interest is demonstrably threatened in a given case. *See, e.g.*, RCW 42.56.240(2) (exempting "[i]nformation revealing the identity of persons who are . . . victims of crime . . . if disclosure would endanger any person's life, physical safety, or property").

In the case of a categorical exemption, the legislature has established a presumption that the specified type of information or record generally warrants exemption. That presumption can be overcome only if a court finds the exemption is

"clearly unnecessary" to protect any privacy rights or vital governmental interests in a particular case. RCW 42.56.210(2). Otherwise, an agency's application of a categorical exemption must be upheld, so long as the agency has accurately identified the nature of the specified information or record. *See, e.g., Lindeman v. Kelso Sch. Dist. No. 458*, 162 Wn.2d 196, 201, 172 P.3d 329 (2007).

In the case of a conditional exemption, specified information or records must be protected, but in furtherance of only certain identified interests, and only insofar as those identified interests are demonstrably threatened in a given case. Application of a conditional exemption will be upheld if the agency has accurately identified the nature of the specified information or record *and* properly determined that an identified interest must be protected in the given case. *See, e.g., Bellevue John Does*, 164 Wn.2d at 210.

The distinction between categorical and conditional exemptions is sometimes blurry, for numerous reasons. First, determining whether specific information or records fall within a given categorical exemption may well require a consideration of privacy or governmental interests. After all, our interpretation of the scope of a given categorical exemption often will depend at least in part on its apparent purposes. *See Hearst*, 90 Wn.2d at 133. And some categorical exemptions distinguish types of information or records based on characteristics tied up with privacy or governmental interests. *See, e.g., Lindeman*, 162 Wn.2d at 202 (defining exempted "personal information" as "information peculiar or proper to *private* concerns" (emphasis

added)). If the application of a seemingly categorical exemption ever actually depends upon a case-by-case evaluation of the need to protect a particular privacy right or vital governmental interest, the exemption then acts as a conditional exemption. Second, in the context of conditional exemptions, determining the need to protect an identified interest is sometimes entrusted to an agency's discretion, which renders the conditional exemption effectively categorical on review. *See Newman v. King County*, 133 Wn.2d 565, 574-75, 947 P.2d 712 (1997) ("This exemption allows the law enforcement agency, not the courts, to determine what information, if any, is essential to solve a case."). Finally, some exemptions are ambiguous and thus difficult to classify. *See, e.g.*, RCW 42.56.300(1) (exempting "[r]ecords, maps, or other information identifying the location of archaeological sites *in order to* avoid the looting or depredation of such sites" (emphasis added)); RCW 42.56.420(3) (exempting "[i]nformation compiled . . . in the development of . . . comprehensive safe school plans . . . to the extent that they identify specific vulnerabilities").

The blurry distinction between categorical and conditional exemptions should not be surprising, given that the PRA is a complex and often confusing statutory framework that is the result of numerous legislative enactments and now contains over 140 varied exemptions. In most instances, however, the distinction does remain clear. *Compare* RCW 42.56.240(6) (exempting the "statewide gang database"), *and* RCW 42.56.250(1) (exempting "[t]est questions, scoring keys, and other examination data used to administer a license, employment, or academic examination"), *with* RCW

42.56.230(4)(b) (exempting "[i]nformation required of any taxpayer . . . if the disclosure . . . [would] violate the taxpayer's right to privacy or result in unfair competitive disadvantage"), *and* RCW 42.56.270(1) (exempting "[v]aluable formulae . . . when disclosure would produce private gain and public loss"). In every instance, the relevant question is simply whether applying the exemption requires a particularized finding of the need to protect a privacy right or a vital governmental interest. If so, the exemption is conditional and applies if and only if there is such a need in the given case; if the exemption is not conditional, then the exemption is categorical and it applies outright to all information or records included within the general category specified.

A list of the 141 current PRA exemptions, preliminarily sorted into relevant types, is included as an appendix to this opinion. The list includes (1) categorical-information exemptions, (2) categorical-record exemptions, (3) categorical-hybrid exemptions (exempting both information and records), (4) conditional-information exemptions, (5) conditional-record exemptions, and (6) conditional-hybrid exemptions. The list also includes four ambiguous exemptions that will require serious consideration and construction prior to any attempt at appropriate grouping. Further review may also disclose that an exemption listed in one group has been sorted incorrectly and actually belongs in another group. But this preliminary sorting of exemptions still should prove useful to agencies trying to navigate and comply with the PRA. Agencies should also be aware that many exemptions contain specified

limitations, which must be followed when relevant. *See, e.g.*, RCW 42.56.360(1)(j) (exempting "documents . . . received pursuant to a wellness program under RCW 41.04.362, but not statistical reports that do not identify an individual").

In sum, an agency facing a request for disclosure under the PRA should take the following steps: First, determine whether any public records are responsive to the request—if not, the PRA does not apply. Second, insofar as certain public records are responsive, determine whether any exemptions apply generally to those types of records or to any of the types of information contained therein. An agency should be sure to consider any specified limitations to an exemption when discerning the exemption's scope of potential application. If no exemption applies generally to the relevant types of records or information, the requested public records must be disclosed. Third, if an exemption applies generally to a relevant type of information or record, then determine whether the exemption is categorical or conditional. If the exemption is conditional and the condition is not satisfied in the given case, the records must be disclosed. Fourth, if the exemption is categorical, or if the exemption is conditional and the condition is satisfied, then the agency must consider whether the exemption applies to entire records or only to certain information contained therein. If the exemption applies only to certain information, then the agency must consider whether the exempted information can be redacted from the records such that no exemption applies (and some modicum of information remains). If the exemption applies to entire records, then those records are exempted and need not be disclosed,

15

unless redaction can transform the record into one that is not exempted (and some modicum of information remains). If effective redaction is possible, records must be so redacted and disclosed. Otherwise, disclosure is not required under the PRA. These are the indispensable steps that an agency should take in order to properly respond to a PRA request. These steps are visually represented in the flowchart contained in figure 1.

**Figure 1.** Determining whether disclosure is required under the PRA



The "clearly unnecessary" inquiry under RCW 42.56.210(2) serves in rare cases to judicially override exemptions that otherwise apply to a specified type of information or record. The standard is quite high and is relevant to all categorical exemptions but only some conditional exemptions. In the case of a categorical exemption, all information or records of a specified nature are presumed exempt unless a court finds the exemption clearly unnecessary in a given instance. In the case of a conditional exemption, if the need to protect an identified interest is reviewed de novo, a court will not consider whether the conditional exemption is "clearly unnecessary" because the conditional exemption will be applicable in the first place only if it *is* necessary to protect an identified interest. However, if determining the need to protect an identified interest is vested in the discretion of an agency, it may be necessary for a court to consider whether the conditional exemption is "clearly unnecessary" under the circumstances, or in other words, whether the agency has abused its wide discretion.

The foregoing discussion should provide adequate guidance to agencies such as SHA in responding to requests for public records. Taking into consideration both the relevant context of cooperative federalism and the overarching framework of the PRA, we now turn to whether SHA complied with the PRA in responding to RAC's request for grievance hearing decisions.

B.    Application

SHA violated the PRA. Initially, the *silent* withholding of the unredacted

grievance hearing decisions was a violation. But even beyond SHA's improper

silence, the withholding itself was also in violation of the PRA. The heart of SHA's

position—that the unredacted grievance hearing decisions within tenant files are

*entirely* exempted from redaction or disclosure because they contain personal

information of welfare recipients—is untenable. These public records do contain

exempted information about welfare recipients, but the records remain subject to

disclosure insofar as redaction can render all exemptions inapplicable. Relevant

federal regulations do not prohibit production of the documents or preempt the PRA.

Thus, SHA must redact and produce these documents pursuant to the PRA. The trial

court acted within its broad discretion in ordering SHA to produce responsive

documents in electronic format, in also ordering SHA to establish policies and

procedures necessary to ensuring compliance with the PRA, and in awarding statutory

damages.

1.    *PRA Redaction Requirement*

SHA hearing decisions are public records subject to the PRA's disclosure

requirements. The hearing decisions relate to the provision of public housing, and

SHA (a local agency) retains the documents in individual tenant files. Thus, the

hearing decisions are public records. *See* RCW 42.56.010(3). SHA is correct that the

hearing decisions are exempt from blanket production insofar as they include

"[p]ersonal information in . . . files maintained for . . . welfare recipients." RCW 42.56.230(1). The parties do not dispute that the grievance hearing decisions do contain such information. But the PRA requires production of otherwise exempted records insofar as exempt information can be deleted. *See* RCW 42.56.070(1), .210(1).

SHA argues that the PRA's redaction requirement simply does not apply to records containing personal information and maintained in welfare-recipient files. SHA reasons that such information is not subject to redaction because it is exempted categorically, unlike, for example, "[p]ersonal information in files maintained for [public] employees," which is exempted "to the extent that disclosure would violate their right to privacy." RCW 42.56.230(3). SHA's argument is thus that the PRA's redaction requirement, which applies only to information "the disclosure of which would violate personal privacy or vital governmental interests," RCW 42.56.210(1), does not apply to any categorical exemptions and applies only to conditional exemptions (i.e., exemptions that explicitly identify relevant privacy rights or governmental interests). SHA's interpretation of the PRA reflects a failure to appreciate the overall framework of the PRA, and SHA is clearly wrong, for numerous reasons.

First, SHA ignores that *all* exemptions, including categorical exemptions, are intended to protect personal privacy and governmental interests. *See Limstrom*, 136 Wn.2d at 607; RCW 42.56.210(2).

Second, SHA ignores that the redaction provision in the PRA explicitly lists only two exemptions that are not subject to the PRA's redaction requirement, and the welfare recipient exemption is not on that list. RCW 42.56.210(1).

Third, the two exemptions listed as not being subject to the redaction requirement are themselves categorical, and explicitly removing those provisions from the scope of the redaction requirement would have been superfluous if SHA's interpretation were correct.

Fourth, we already have held that the PRA's command to redact information "that would violate personal privacy or governmental interests" simply means that an agency must redact to overcome any and all relevant exemptions, insofar as possible. *See Hearst*, 90 Wn.2d at 132-33; *PAWS* II, 125 Wn.2d at 261. Requiring anything more or different would be too complicated, unworkable, and time-consuming for agencies operating under the PRA. Insofar as redaction can render all exemptions inapplicable, the PRA requires disclosure.

Fifth, we already have applied the redaction requirement to numerous categorical exemptions. *See Sanders*, 169 Wn.2d at 858; *Hearst*, 90 Wn.2d at 132; *see also Prison Legal News, Inc. v. Dep't of Corr.*, 154 Wn.2d 628, 645, 115 P.3d 316 (2005). In fact, perhaps most importantly, we already have explained that the redaction requirement applies to *the very exemption provision at issue in this case. See Oliver*, 94 Wn.2d at 567.

Sixth, if SHA's interpretation were correct, only a small number of the PRA's numerous exemptions (that is, only conditional exemptions) would be subject to the redaction requirement, contrary to the overriding purpose of the PRA and the legislature's admonition that the PRA "shall be liberally construed and it exemptions narrowly construed . . . ." RCW 42.56.030.

Seventh, SHA provides no explanation of why the legislature would want to exempt absolutely from disclosure any records initially containing exempt personal information—even if redaction could render the exemption inapplicable. SHA's reading makes no sense, particularly when considering the wide range of categorical exemptions in the PRA, some of which are quite limited in scope. For example, RCW 42.56.350(1) exempts certain "federal social security number[s] . . . maintained in the files of the department of health," and under SHA's intepretation, any record containing such a social security number would be absolutely exempted from production, notwithstanding the fact that the Social Security number could simply be redacted. If the legislature actually had been interested in protecting the entire records in question, presumably it would have said so.

SHA's suggested approach to exemption and redaction is untenable. If redaction sufficiently protects privacy and governmental interests—that is, if redaction can render all exemptions inapplicable—disclosure is required. Thus, SHA's unredacted grievance hearing decisions are not absolutely exempt from production and remain subject to the PRA's redaction requirement.

### 2. Federal Exemption or Preemption

Having rejected SHA's untenable interpretation of the PRA, we now consider the significance of applicable federal regulations because SHA's grievance hearing decisions are created pursuant to federal law. The applicable federal regulations do not exempt the unredacted grievance hearing decisions from disclosure under the PRA. Nor do the applicable regulations preempt the PRA under the supremacy clause of the federal constitution. The PRA thus applies to the unredacted grievance hearing decisions, which are public records, and mandates redaction and disclosure.

Applicable federal regulations do not exempt the grievance hearing decisions from public disclosure. This inquiry is relevant because the PRA exempts from disclosure records that are protected by federal regulations. *See Ameriquest Mortgage Co. v. Wash. State Office of Att'y Gen.*, 170 Wn.2d 418, 439-40, 241 P.3d 1245 (2010); RCW 42.56.070. In this case, applicable federal regulations establish only procedural minimums, requiring each housing authority to provide redacted copies of prior decisions to assist tenants facing imminent adverse action—the regulations do not prohibit or otherwise regulate disclosure of public records. Specifically, 24 C.F.R. § 966.57(a) provides that each written hearing decision "shall be sent to . . . the PHA," and the PHA "shall retain a copy of the decision in the tenant's folder" and retain another copy "with all names and identifying references deleted" on file and "made available for inspection by a prospective complainant, his representative, or the hearing panel or hearing officer." This regulation does not prohibit disclosure in any

23

way; it merely ensures a limited form of disclosure to a limited class of persons in order to promote fairness within each housing authority's grievance hearing process. In the context of cooperative federalism, this minimum requirement allows each state agency to conduct the rest of its disclosure practices in accordance with relevant state law. *See* 42 U.S.C. § 1437(a)(1)(C). In some states, disclosure of such materials might be entirely prohibited; in that case, the federal regulation ensures a certain type of disclosure to further the grievance hearing process while allowing the state agency to otherwise restrict access, thus causing a minimal intrusion upon state and local laws. By the same token, the regulation does not prevent SHA from disclosing grievance hearing documents in accordance with the PRA. HUD promulgated this regulation without commenting on its particular significance. *See* 40 Fed. Reg. 33,406, 33,406-08 (Aug. 7, 1975). In related contexts, however, HUD has made clear that it intends for state laws to generally govern disclosure and production of housing authority documents. *See* 56 Fed. Reg. 51,560, 51,566 (Oct. 11, 1991) ("The statute and rule do not purport to establish a Federal privilege against discovery of directly relevant PHA documents . . . . However, the statute and rule also do not override other independently recognized privileges."); *see also* 53 Fed. Reg. 33,216, 33,281 (Aug. 30, 1988) ("The rule does not disturb the PHA's right to deny production of privileged documents in accordance with State law . . . . At the same time, however, the rule does not establish . . . any rules governing the circumstances in which a privilege arises. Rather, the rule defers to State law . . . and therefore to State policy

underlying the grant or denial of a privilege."), *withdrawn on other grounds*, 53 Fed. Reg. 44,876 (Nov. 7, 1988). We have held that exemptions outside of the PRA must be explicit, and there is no explicit exemption here. *See PAWS* II, 125 Wn.2d at 262.

Nor do the applicable federal regulations preempt the PRA. Federal preemption occurs only if (1) federal law expressly preempts state law, (2) Congress has occupied an entire field of regulation to the exclusion of any state laws, or (3) state law conflicts with federal law due to either impossibility of joint compliance or state law acting as an obstacle to accomplishment of a federal purpose. *See PAWS* II, 125 Wn.2d at 265. In this case there is no express preemption, and given the nature of cooperative federalism, no field preemption either. There is also no conflict preemption, given that the applicable regulations do not prohibit disclosure of the unredacted grievance hearing decisions and the PRA does not act as an obstacle to any federal purpose. There is a strong presumption against finding that federal law has preempted state law. *State v. Kalakosky*, 121 Wn.2d 525, 546, 852 P.2d 1064 (1993). Further, "'the case for federal preemption becomes a less persuasive one'" within a system of cooperative federalism, where "'coordinated state and federal efforts exist within a complementary administrative framework,'" as in this case. *State of Washington v. Bowen*, 815 F.2d 549, 557 (9th Cir. 1987) (quoting *N.Y. Dep't of Soc. Servs.v. Dublino*, 413 U.S. 405, 421, 93 S. Ct. 2507, 37 L. Ed. 2d 688 (1973)). The PRA applies to SHA's grievance hearing decisions.

In sum, SHA's unredacted grievance hearing decisions are subject to disclosure under the PRA. The documents are public records that are subject to the PRA's redaction requirement. Applicable federal regulations neither exempt the documents from disclosure nor preempt the operation of the PRA. Thus, SHA is obligated to produce the grievance hearing decisions, redacted only to exclude personal information of welfare recipients for whom the documents are maintained.

### 3. Injunctive Relief

The trial court did not abuse its discretion in ordering injunctive relief. The trial court ordered SHA to produce properly redacted copies of the grievance hearing decisions in electronic format. The trial court also ordered SHA to publish procedures regarding public records requests; to publish a list of applicable exemptions; and to establish policies governing redaction, explanations of withholding, and electronic records. The trial court acted within its "broad discretionary power to shape and fashion injunctive relief to fit the particular facts, circumstances, and equities of the case before it." *Brown v. Voss*, 105 Wn.2d 366, 372, 715 P.2d 514 (1986) (emphasis omitted).

An injunction is a remedy that "'should be used sparingly and only in a clear and plain case.'" *Kucera*, 140 Wn.2d at 209 (quoting 42 AM. JUR. 2d *Injunctions* § 2, at 728 (1969)). A party seeking an injunction must show (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) actual and substantial injury as a result. *Wash. Fed'n of State Employees v. State*, 99 Wn.2d 878,

888, 665 P.2d 1337 (1983). On appellate review, a "trial court's decision to grant an injunction and its decision regarding the terms of the injunction are reviewed for abuse of discretion." *Kucera*, 140 Wn.2d at 209. Further, a trial court's decision "is presumed to be correct and should be sustained absent an affirmative showing of error." *State v. Wade*, 138 Wn.2d 460, 464, 979 P.2d 850 (1999).

The trial court did not abuse its discretion. RAC has a clear right to appropriate production of requested documents, SHA has refused to produce those documents, and RAC remains without the public records it has requested. On numerous occasions we have allowed detailed "disclosure orders" in PRA cases to remedy an agency's failure to comply with the PRA. *In re Request of Rosier*, 105 Wn.2d 606, 618, 717 P.2d 1353 (1986); *see also, e.g.*, *PAWS* II, 125 Wn.2d at 250; *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 792, 801, 791 P.2d 526 (1990).

Ordering SHA to undertake particular redactions and then to produce the redacted documents in a particular format was a legitimate way for the trial court to resolve the precise controversy before it, which arose out of RAC's request for the documents in question and SHA's failure to respond appropriately. RAC has continued to express its preference for electronic copies, and SHA has acknowledged that producing electronic copies costs SHA no more than producing hard copies.

Neither party challenges the trial court's instructions regarding the precise redactions to be made in this case. Thus, without directly addressing that issue, we

affirm the trial court's decision that under the PRA, SHA must redact the names and identifying information of all SHA tenants from the grievance hearing decisions.

The trial court also acted within its discretion in ordering SHA to publish procedures regarding public records requests; to publish a list of applicable exemptions; and to establish policies governing redaction, explanations of withholding, and electronic records. SHA's total failure to establish reasonable and effective policies and procedures to govern disclosure of public records was in violation of the PRA, *see* RCW 42.56.040, .070, clearly contributed to SHA's failure to adequately respond to RAC's immediate request for public records, and would contribute to similar failures going forward. The trial court thus found it necessary to order SHA to establish such policies and procedures in order to ensure that RAC was provided complete relief. *See Dare v. Mt. Vernon Inv. Co.*, 121 Wash. 117, 120, 208 P. 609 (1922) ("[A] court of equity . . . has the right to grant such ancillary or incidental relief as will be necessary to make the relief sought complete."). SHA has not affirmatively shown that this was an abuse of discretion.

In sum, the trial court acted within its discretion in ordering SHA to properly redact and electronically produce the grievance hearing decisions that RAC has requested and to establish needed policies and procedures to govern proper disclosure of public records.

4.      *Statutory Damages and Fees*

We affirm the trial court's award of statutory damages. SHA does not dispute the amount of that award, only whether statutory damages were authorized at all. Because SHA did violate the PRA, the award of statutory damages was indeed authorized. *See* RCW 42.56.550(4).

We also award RAC its attorney fees on appeal. Under the PRA, any person who "prevails against an agency" in seeking the right to inspect or copy records "shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." *Id.* This applies to fees incurred on appeal. *See, e.g., PAWS* II, 125 Wn.2d at 271.

## IV.  CONCLUSION

We uphold the trial court's orders requiring SHA to redact and disclose the grievance hearing decisions in electronic format, directing SHA to establish necessary policies and procedures to ensure compliance with the PRA, and awarding RAC statutory damages. We also award fees to RAC on appeal. The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

# APPENDIX

## CURRENT PUBLIC RECORDS ACT EXEMPTIONS
## (Chapter 42.56 RCW)

I.   CATEGORICAL EXEMPTIONS

    a. *Categorical-Information Exemptions* (certain types of information exempted categorically)

        1.   "Personal information in any files maintained for students in public schools, patients or clients of public institutions or public health agencies, or welfare recipients" .230(1)

        2.   "Personal information . . . for a participant in a public or nonprofit program serving or pertaining to children, adolescents, or students" .230(2)

        3.   "Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure . . . [would be] prohibited to such persons by RCW 84.08.210, 82.32.330, 84.40.020, 84.40.340, or any ordinance authorized under RCW 35.102.145" .230(4)(a)

        4.   "Credit card numbers, debit card numbers, electronic check numbers, card expiration dates, or bank or other financial account numbers" .230(5)

        5.   "Personal and financial information related to a small loan" .230(6)

        6.   "Information provided under RCW 46.20.111 that indicates that an applicant declined to register with the selective service system" .230(7)(b)

        7.   "Information revealing the identity of child victims of sexual assault who are under age eighteen" .240(5)

        8.   "Data from the electronic sales tracking system" .240(7)

        9.   "Information submitted to the statewide unified sex offender notification and registration program . . . by a person for the purpose of receiving notification regarding a registered sex offender" .240(8)

10. "Personally identifying information collected by law enforcement agencies pursuant to local security alarm system programs and vacation crime watch programs" .240(9)

11. "Test questions, scoring keys, and other examination data used to administer a license, employment, or academic examination" .250(1)

12. "The residential addresses, residential telephone numbers, personal wireless telephone numbers, personal electronic mail addresses, social security numbers, and emergency contact information of employees or volunteers of a public agency, and the names, dates of birth, residential addresses, residential telephone numbers, personal wireless telephone numbers, personal electronic mail addresses, social security numbers, and emergency contact information of dependents of employees or volunteers of a public agency that are held by any public agency in personnel records, public employment related records, or volunteer rosters, or are included in any mailing list of employees or volunteers of any public agency" .250(3)

13. "Information that identifies a person who, while an agency employee: (a) Seeks advice, under an informal process established by the employing agency, in order to ascertain his or her rights in connection with a possible unfair practice under chapter 49.60 RCW against the person; and (b) requests his or her identity or any identifying information not be disclosed" .250(4)

14. "[S]alary and benefit information for maritime employees collected from private employers" .250(7)

15. "Photographs and month and year of birth in the personnel files of employees and workers of criminal justice agencies" .250(8)

16. "[T]he contents of real estate appraisals, made for or by any agency relative to the acquisition or sale of property, until the project or prospective sale is abandoned or . . . all of the property has been acquired or . . . sold" .260

17. "Financial information supplied . . . for the purpose of qualifying to submit a bid or proposal for (a) a ferry system construction or repair contract . . . or (b) highway construction or improvement" .270(2)

18. "Financial information, business plans, examination reports, and any information produced or obtained in evaluating or examining

a business and industrial development corporation organized or seeking certification under chapter 31.24 RCW" .270(5)

19. "Financial and valuable trade information under RCW 51.36.120" .270(7)

20. "Financial, commercial, operations, and technical and research information and data submitted to or obtained by the clean Washington center in applications for, or delivery of, program services under chapter 70.95H RCW" .270(8)

21. "Financial and commercial information requested by the public stadium authority from any person or organization that leases or uses the stadium and exhibition center" .270(9)

22. "Financial information . . . supplied by or on behalf of a person . . . . related to an application for a horse racing license . . . liquor license, gambling license, or lottery retail license" .270(10)(a)

23. "Proprietary data, trade secrets, or other information that relates to: (a) A vendor's unique methods of conducting business; (b) data unique to the product or services of the vendor; or (c) determining prices or rates to be charged for services, submitted by any vendor to the department of social and health services for purposes of the development, acquisition, or implementation of state purchased health care" .270(11)

24. "Financial and proprietary information . . . provided to the department of commerce pursuant to RCW 43.330.050(8) . . . [or] provided to the department of commerce or the office of the governor in connection with the siting . . . of that person's business and until a siting decision is made, identifying information of any person supplying information . . . and the locations being considered" .270(12)

25. "Financial and proprietary information submitted to or obtained by the department of ecology or the authority created under chapter 70.95N RCW to implement chapter 70.95N RCW" .270(13)

26. "Financial and commercial information provided as evidence to the department of licensing as required by RCW 19.112.110 or 19.112.120" .270(15)

27. "Information gathered under chapter 19.85 RCW or RCW 34.05.328 that can be identified to a particular business" .270(19)

28. "Financial and commercial information supplied by or on behalf of a person, firm, corporation, or entity under chapter 28B.95 RCW relating to the purchase or sale of tuition units and contracts for the purchase of multiple tuition units" .320(2)

29. "Individually identifiable information received by the workforce training and education coordinating board for research or evaluation purposes" .320(3)

30. "The residential addresses and residential telephone numbers of the customers of a public utility contained in the records or lists held by the public utility of which they are customers" .330(2)

31. "The personally identifying information of current or former participants or applicants in a paratransit or other transit service operated for the benefit of persons with disabilities or elderly persons" .330(4)

32. "The personally identifying information of persons who acquire and use transit passes or other fare payment media including, but not limited to, stored value smart cards and magnetic strip cards" .330(5)

33. "Any information obtained by governmental agencies that is collected by the use of a motor carrier intelligent transportation system or any comparable information equipment attached to a truck, tractor, or trailer" .330(6)

34. "The personally identifying information of persons who acquire and use transponders or other technology to facilitate payment of tolls" .330(7)

35. "The personally identifying information of persons who acquire and use a driver's license or identicard that includes a radio frequency identification chip or similar technology to facilitate border crossing" .330(8)

36. "Membership lists or lists of members or owners of interests of units in timeshare projects, subdivisions, camping resorts, condominiums, land developments, or common-interest communities affiliated with such projects, regulated by the department of licensing, in the files or possession of the department" .340

37. "The federal social security number of individuals governed under chapter 18.130 RCW maintained in the files of the department of health" .350(1)

38. "The current residential address and current residential telephone number of a health care provider governed under chapter 18.130 RCW maintained in the files of the department" .350(2)

39. "Information obtained by the board of pharmacy as provided in RCW 69.45.090" .360(1)(a)

40. "Information obtained by the board of pharmacy or the department of health and its representatives as provided in RCW 69.41.044, 69.41.280, and 18.64.420" .360(1)(b)

41. "Proprietary financial and commercial information that the submitting entity, with review by the department of health, specifically identifies at the time it is submitted and that is provided to or obtained by the department of health in connection with an application for, or the supervision of, an antitrust exemption" .360(1)(d)(i)

42. "Information obtained by the department of health under chapter 70.225 RCW" .360(1)(g)

43. "Information collected by the department of health under chapter 70.245 RCW except as provided in RCW 70.245.150" .360(1)(h)

44. "Cardiac and stroke system performance data submitted to national, state, or local data collection systems" .360(1)(i)

45. "Business-related information under RCW 15.86.110" .380(1)

46. "Information provided under RCW 15.54.362" .380(2)

47. "Consignment information contained on phytosanitary certificates issued by the department of agriculture . . . or federal phytosanitary certificates . . . or on applications for phytosanitary certification required by the department of agriculture" .380(4)

48. "Information obtained regarding the purchases, sales, or production of an individual American ginseng grower or dealer, except for providing reports to the United States fish and wildlife service under RCW 15.19.080" .380(6)

49. "Information collected regarding packers and shippers of fruits and vegetables for the issuance of certificates of compliance under RCW 15.17.140(2) and 15.17.143" .380(7)

50. "Information submitted by an individual or business to the department of agriculture . . . for the purpose of herd inventory management for animal disease traceability" .380(9)

51. "Results of testing for animal diseases from samples submitted by or at the direction of the animal owner or his or her designee that can be identified to a particular business or individual" .380(10)

52. "Names of individuals residing in emergency or transitional housing that are furnished to the department of revenue or a county assessor in order to substantiate a claim for property tax exemption under RCW 84.36.043" .390

53. "Information obtained and exempted or withheld from public inspection by the health care authority under RCW 41.05.026" .400(2)

54. "The names and individual identification data of either all owners or all insureds, or both, received by the insurance commissioner under chapter 48.102 RCW" .400(3)

55. "Information provided under RCW 48.30A.045 through 48.30A.060" .400(4)

56. "Information provided under RCW 48.05.510 through 48.05.535, 48.43.200 through 48.43.225, 48.44.530 through 48.44.555, and 48.46.600 through 48.46.625" .400(5)

57. "Information provided to the insurance commissioner under RCW 48.110.040(3)" .400(7)

58. "Data filed under RCW 48.140.020, 48.140.030, 48.140.050, and 7.70.140 that, alone or in combination with any other data, may reveal the identity of a claimant, health care provider, health care facility, insuring entity, or self-insurer involved in a particular claim or a collection of claims" .400(10)

59. "Information in a filing of usage-based insurance about the usage-based component of the rate pursuant to RCW 48.19.040(5)(b)" .400(20)

60. "The security section of transportation system safety and security program plans required under RCW 35.21.228, 35A.21.300, 36.01.210, 36.57.120, 36.57A.170, and 81.112.180" .420(5)

61. "The nesting sites or specific locations of endangered species designated under RCW 77.12.020, or threatened or sensitive species classified by rule of the department of fish and wildlife" .430(2)(a)

62. "Radio frequencies used in, or locational data generated by, telemetry studies" .430(2)(b)

63. "The personally identifying information of persons who acquire recreational licenses under RCW 77.32.010 or commercial licenses under chapter 77.65 or 77.70 RCW, except name, address of contact used by the department, and type of license, endorsement, or tag" .430(3)

64. "Information that the department of fish and wildlife has received or accessed but may not disclose due to confidentiality requirements in the Magnuson-Stevens fishery conservation and management reauthorization act of 2006 (16 U.S.C. Sec. 1861(h)(3) and (i), and Sec. 1881a(b))" .430(4)

65. "Information in an application for licensing or a small loan endorsement under chapter 31.45 RCW regarding the personal residential address, telephone number of the applicant, or financial statement" .450

66. "Information relating to . . . [r]ailroad company contracts filed prior to July 28, 1991, with the utilities and transportation commission under RCW 81.34.070" .480(1)

67. "Personal information in files maintained in a database created under RCW 43.07.360" .480(2)

68. "Data collected by the department of social and health services for the reports required by section 8, chapter 231, Laws of 2003, except as compiled in the aggregate and reported to the senate and house of representatives" .480(3)

69. "The following information in plans, records, and reports obtained by state and local agencies from dairies, animal feeding operations, and concentrated animal feeding operations, not required to apply for a national pollutant discharge elimination system permit is disclosable only in ranges that provide meaningful information to the public while ensuring confidentiality of business information regarding: (1) Number of animals; (2) volume of livestock nutrients generated; (3) number of acres covered by the plan or used for land application of livestock nutrients; (4) livestock nutrients transferred to other persons; and (5) crop yields" .610

b. *Categorical-Record Exemptions* (certain types of records exempted categorically)

1. "Documents and related materials and scanned images of documents and related materials used to prove identity, age,

residential address, social security number, or other personal information required to apply for a driver's license or identicard" .230(7)(a)

2. "Any records of investigative reports prepared by any . . . law enforcement agency pertaining to sex offenses . . . which have been transferred to the Washington association of sheriffs and police chiefs for permanent electronic retention and retrieval" .240(3)

3. "License applications under RCW 9.41.070" .240(4)

4. "The statewide gang database" .240(6)

5. "All applications for public employment, including the names of applicants, resumes, and other related materials submitted with respect to an applicant" .250(2)

6. "Investigative records compiled by an employing agency conducting an active and ongoing investigation of a possible unfair practice . . . or of a possible violation of . . . laws prohibiting discrimination in employment" .250(5)

7. "Criminal history records checks for board staff finalist candidates" .250(6)

8. "Internal control documents, independent auditors' reports and financial statements, and supporting documents: (i) Of house-banked social card game licensees . . . or (ii) submitted by tribes with an approved tribal/state compact for class III gaming" .270(10)(b)

9. "Farm plans developed by conservation districts . . . [or] developed under chapter 90.48 RCW" .270(17)

10. "Preliminary drafts, notes, recommendations, and intra-agency memorandums in which opinions are expressed or policies formulated or recommended" .280

11. "Records that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts" .290

12. "Any library record, the primary purpose of which is to maintain control of library materials, or to gain access to information, that discloses or could be used to disclose the identity of a library user" .310

13. "Financial disclosures filed by private vocational schools under chapters 28B.85 and 28C.10 RCW" .320(1)

14. "[A]ny records or documents obtained by a state college, university, library, or archive through or concerning any gift . . . the terms of which restrict or regulate public access to those records or documents" .320(4)

15. "The annual declaration of intent filed by parents . . . for a child to receive home-based instruction" .320(5)

16. "[R]ecords of any person who belongs to a public utility district or a municipally owned electrical utility" .335

17. "Records of the entity obtained in an action under RCW 18.71.300 through 18.71.340" .360(1)(e)

18. "Complaints filed under chapter 18.130 RCW after July 27, 1997, to the extent provided in RCW 18.130.095(1)" .360(1)(f)

19. "All documents, including completed forms, received pursuant to a wellness program under RCW 41.04.362" .360(1)(j)

20. "Client records maintained by an agency that is a domestic violence program . . . or a community sexual assault program or services for underserved populations" .370

21. "Production or sales records required to determine assessment levels and actual assessment payments to commodity boards and commissions . . . or required by the department of agriculture" .380(3)

22. "Financial statements obtained under RCW 16.65.030(1)(d) for the purposes of determining whether or not the applicant meets the minimum net worth requirements to construct or operate a public livestock market" .380(8)

23. "Records of international livestock importation that can be identified to a particular animal, business, or individual received from the United States department of homeland security or the United States department of agriculture that are not disclosable by the federal agency under federal law including 5 U.S.C. Sec. 552" .380(11)

24. "Records related to the entry of prohibited agricultural products imported into Washington state or that had Washington state as a final destination received from the United States department of homeland security or the United States department of agriculture

that are not disclosable by the federal agency under federal law including 5 U.S.C. Sec. 552" .380(12)

25. "Records maintained by the board of industrial insurance appeals that are related to appeals of crime victims' compensation claims filed with the board" .400(1)

26. "Confidential and privileged documents obtained or produced by the insurance commissioner and identified in RCW 48.37.080" .400(13)

27. "Records maintained by the employment security department and subject to chapter 50.13 RCW if provided to another individual or organization for operational, research, or evaluation purposes" .410

28. "Discharge papers of a veteran of the armed forces of the United States filed at the office of the county auditor before July 1, 2002, that have not been commingled with other recorded documents" .440(1)

29. "Discharge papers of a veteran of the armed forces of the United States filed at the office of the county auditor before July 1, 2002, that have been commingled with other records . . . if the veteran has recorded a 'request for exemption from public disclosure of discharge papers' with the county auditor" .440(2)

30. "Discharge papers of a veteran filed at the office of the county auditor after June 30, 2002" .440(3)

31. "All records obtained and all reports produced as required by state fireworks law, chapter 70.77 RCW" .460

32. "Records of mediation communications that are privileged under chapter 7.07 RCW" .600

c. *Categorical-Hybrid Exemptions* (both records and information exempted categorically)

1. "Financial and commercial information and records supplied by private persons pertaining to export services . . . and by persons pertaining to export projects" .270(3)

2. "Financial and commercial information and records supplied . . . during application for loans or program services . . . or during application for economic development loans or program services" .270(4)

3. "Any production records, mineral assessments, and trade secrets submitted by a permit holder, mine operator, or landowner to the department of natural resources under RCW 78.44.085" .270(16)

4. "The names, residential addresses, residential telephone numbers, and other individually identifiable records held by an agency in relation to a vanpool, carpool, or other ride-sharing program or service" .330(3)

5. "Information and documents created specifically for, and collected and maintained by a quality improvement committee . . . or by a peer review committee . . . or by a quality assurance committee . . . or by a hospital . . . for reporting of health care-associated infections[,] . . . a notification of an incident[,] . . . and reports regarding adverse events" .360(1)(c)

6. "Documents related to infant mortality reviews conducted pursuant to RCW 70.05.170 are exempt from disclosure as provided for in RCW 70.05.170(3) [exempting certain records and information]" .360(3)(a)

7. "Financial and commercial information and records supplied by persons (a) to the department of agriculture for the purpose of conducting a referendum for the potential establishment of a commodity board or commission; or (b) to the department of agriculture or commodity boards or commissions . . . with respect to domestic or export marketing activities or individual producer's production information" .380(5)

8. "Examination reports and information obtained by the department of financial institutions from banks under RCW 30.04.075, from savings banks under RCW 32.04.220, from savings and loan associations under RCW 33.04.110, from credit unions under RCW 31.12.565, from check cashers and sellers under RCW 31.45.030(3), and from securities brokers and investment advisers under RCW 21.20.100" .400(6)

9. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.02.065" .400(8)

10. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.135.060" .400(11)

11. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.37.060" .400(12)

12. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.37.140" .400(14)

13. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.17.595" .400(15)

14. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.102.051(1) and 48.102.140 (3) and (7)(a)(ii)" .400(16)

15. "Documents, materials, or information obtained by the insurance commissioner in the commissioner's capacity as receiver under RCW 48.31.025 and 48.99.017, which are records under the jurisdiction and control of the receivership court" .400(17)

16. "Documents, materials, or information obtained by the insurance commissioner under RCW 48.13.151" .400(18)

17. "Data, information, and documents provided by a carrier pursuant to section 1, chapter 172, Laws of 2010" .400(19)

18. "Data, information, and documents, other than those described in RCW 48.02.210(2), that are submitted to the office of the insurance commissioner by an entity providing health care coverage pursuant to RCW 28A.400.275 and 48.02.210" .400(21)

19. "Documents, materials, and information obtained by the insurance commissioner under RCW 48.05.385(2)" .403

20. "All records, documents, data, and other materials obtained under the requirements of RCW 72.09.115 from an existing correctional industries class I work program participant or an applicant for a proposed new or expanded class I correctional industries work program" .470

## II. CONDITIONAL EXEMPTIONS

a. *Conditional-Information Exemptions* (certain types of information exempted insofar as identified privacy/governmental interests are implicated)

1. "Personal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate their right to privacy" .230(3)

2. "Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the

information to the other persons would . . . violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer" .230(4)(b)

3. "Information revealing the identity of persons who are witnesses to or victims of crime or who file complaints with investigative, law enforcement, or penology agencies . . . if disclosure would endanger any person's life, physical safety, or property" .240(2)

4. "Valuable formulae, designs, drawings, [code], and research data obtained by any agency within five years . . . when disclosure would produce private gain and public loss" .270(1)

5. "Financial and commercial information supplied to the state investment board by any person when the information relates to the investment of public trust or retirement funds and when disclosure would result in loss to such funds or in private loss to the providers of this information" .270(6)

6. "Financial, commercial, operations, and technical and research information and data submitted to or obtained by the life sciences discovery fund authority in applications for, or delivery of, grants under chapter 43.350 RCW, to the extent that such information, if revealed, would reasonably be expected to result in private loss to the providers of this information" .270(14)

7. "Financial, commercial, operations, and technical and research information and data submitted to or obtained by a health sciences and services authority in applications for, or delivery of, grants under RCW 35.104.010 through 35.104.060, to the extent that such information, if revealed, would reasonably be expected to result in private loss to providers of this information" .270(18)

8. "Financial and commercial information submitted to or obtained by the University of Washington . . . when the information relates to investments in private funds, to the extent that such information, if revealed, would reasonably be expected to result in loss to the University of Washington consolidated endowment fund or to result in private loss to the providers of this information" .270(20)

9. "Financial, commercial, operations, and technical and research information and data submitted to or obtained by innovate Washington in applications for, or delivery of, grants and loans under chapter 43.333 RCW, to the extent that such information, if

revealed, would reasonably be expected to result in private loss to the providers of this information" .270(21)

10. "Confidential proprietary and trade secret information provided to the commissioner under RCW 48.31C.020 through 48.31C.050 and 48.31C.070" .400(9)

11. "Those portions of records assembled, prepared, or maintained to prevent, mitigate, or respond to criminal terrorist acts, which are acts that significantly disrupt the conduct of government or of the general civilian population of the state or the United States and that manifest an extreme indifference to human life, the public disclosure of which would have a substantial likelihood of threatening public safety" .420(1)

12. "Those portions of records containing specific and unique vulnerability assessments or specific and unique emergency and escape response plans at a city, county, or state adult or juvenile correctional facility, or secure facility for persons civilly confined . . . the public disclosure of which would have a substantial likelihood of threatening the security of a city, county, or state adult or juvenile correctional facility, secure facility for persons civilly confined . . . or any individual's safety" .420(2)

13. "Commercial fishing catch data from logbooks required to be provided to the department of fish and wildlife under RCW 77.12.047, when the data identifies specific catch location, timing, or methodology and the release of which would result in unfair competitive disadvantage to the commercial fisher providing the catch data" .430(1)

14. "[L]ocation data that could compromise the viability of a specific fish or wildlife population, and where at least one of the following criteria are met: (i) The species has a known commercial or black market value; (ii) There is a history of malicious take of that species and the species behavior or ecology renders it especially vulnerable; (iii) There is a known demand to visit, take, or disturb the species; or (iv) The species has an extremely limited distribution and concentration" .430(2)(c)

b. *Conditional-Record Exemptions* (certain types of records exempted insofar as identified privacy/governmental interests are implicated)

1. "Records filed with the utilities and transportation commission or attorney general under RCW 80.04.095 that [would result in

private loss, including an unfair competitive disadvantage, if disclosed]" .330(1)

c. *Conditional-Hybrid Exemptions* (both records and information exempted insofar as identified privacy/governmental interests are implicated)

1. "Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy" .240(1)

III. AMBIGUOUS EXEMPTIONS (arguably categorical or conditional)

1. "Records, maps, or other information identifying the location of archaeological sites in order to avoid the looting or depredation of such sites" .300(1)

2. "Records, maps, and other information, acquired during watershed analysis . . . under RCW 76.09.370, that identify the location of archaeological sites, historic sites, artifacts, or the sites of traditional religious, ceremonial, or social uses and activities of affected Indian tribes, are exempt from disclosure under this chapter in order to prevent the looting or depredation of such sites" .300(2)

3. "Information compiled by school districts or schools in the development of their comprehensive safe school plans under RCW 28A.320.125, to the extent that they identify specific vulnerabilities of school districts and each individual school" .420(3)

4. "Information regarding the infrastructure and security of computer and telecommunications networks, consisting of security passwords, security access codes and programs, access codes for secure software applications, security and service recovery plans, security risk assessments, and security test results to the extent that they identify specific system vulnerabilities" .420(4)

González, J.

WE CONCUR:

Result Only

Owens, J.

Mc
Chamber, J.P.T.

Korsmo, J.P.T.

No. 87656-8

MADSEN, C.J. (concurring)—Although I concur in the result reached by the majority, I write separately to state my concern that the majority's opinion exceeds the scope of the questions before the court. This court was asked to determine if the trial court erred when it ordered the Seattle Housing Authority (SHA) to produce grievance hearing decisions pursuant to the Public Records Act (PRA), chapter 42.56 RCW, ordered SHA to produce responsive records in electronic format and to establish necessary policies to ensure PRA compliance, and awarded statutory damages. To the extent that the majority upholds the trial court's actions and awards attorney fees on appeal, I concur.

The majority, however, goes far beyond reviewing the trial court's actions. For example, the majority, without briefing or a trial court ruling subject to review, outlines and charts the procedures an agency should follow in responding to public records requests. The majority also takes it upon itself to classify various provisions of the PRA that are unrelated to the issues presented in this case. It appears that the majority is attempting to advise SHA in the development of the very policies and procedures required under the injunction. While this guidance may be helpful, it is unnecessary to the disposition of this case and is improper.

Further, several of the majority's PRA classifications are questionable. For instance, the majority classifies RCW 42.56.230(4)(a) as a categorical-information exemption. RCW 42.56.230(4)(a) exempts information required of any taxpayer if disclosure would be prohibited by RCW 84.08.210, among other statutes. However, RCW 84.08.210 has language mirroring RCW 42.56.230(4)(b), which the majority classifies as conditional.[1] Thus, it is unclear why subsection (a) should be classified as a categorical exemption while subsection (b) is classified as conditional when both provisions require a case-by-case determination. RCW 42.56.230(4)(a) may be more appropriately classified as a conditional exemption than a categorical exemption. Additionally, the majority determines that "business plans" under RCW 42.56.270(5) are information, yet classifies "farm plans" under RCW 42.56.270(17) as records.[2] No analysis is provided for this distinction, nor is analysis provided for several other classifications that are equally questionable.

---

[1] RCW 84.08.210 states that "(2) [t]ax information is confidential and privileged . . . except as authorized by this section" and defines tax information as "(1) . . . confidential income data and proprietary business information . . . the disclosure of which would be either highly offensive to a reasonable person and not a legitimate concern to the public or would result in an unfair competitive disadvantage to the taxpayer." Similarly, RCW 42.56.230(4) exempts "[i]nformation required of any taxpayer" if the disclosure would "(b) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer."

[2] RCW 42.56.270 exempts certain "financial, commercial, and proprietary information" from disclosure, and includes "(5) [f]inancial information, business plans, examination reports, and any information produced or obtained in evaluating or examining a business and industrial development corporation organized or seeking certification under chapter 31.24 RCW" and "(17)(a) [f]arm plans developed by conservation districts, unless permission to release the farm plan is granted by the landowner or operator who requested the plan, or the farm plan is used for the application or issuance of a permit" and also states that "(b) [f]arm plans developed under chapter 90.48 RCW and not under the federal clean water act, 33 U.S.C. Sec. 1251 et seq., are subject to RCW 42.56.610 and 90.64.190."

2

Unwisely, the majority answers questions that the court was not asked to decide and on which no briefing was provided. Our review was limited to the public disclosure of SHA grievance hearing decisions and whether the trial court abused its discretion in ordering the injunctions and damages. In so far as the majority addressed matters outside of this determination, I disagree.

Madsen, C. J.
_____

Johnson, J.

Fairhurst, J.

Stephens, J.